Clement v. Kaighn.

MICKLE CLEMENT and others *vs.* CHARLES KAIGHN and others.

On a bill to foreclose a mortgage, it appeared that C., one of defendants, recovered a judgment against K., the mortgagor, on the 23d of January, 1858, but took out no execution thereon until June 25th, 1862. Complainant's mortgage was recorded on the 26th of December, 1859, and in

Clement *v.* Kaighn.

June, 1861, several other judgments were recovered against the mortgagor, on which executions were promptly taken out and levied on the mortgaged premises. On a dispute about the priority of these several encumbrances, it was *held*—

That C., by neglecting to issue an execution on his judgment until after executions had been issued on the junior judgments had lost his priority, not only over the younger judgments, but also over the complainants' mortgage, which was entitled to priority over the younger judgments.

The history of the legislation of this state regulating the priority of executions reviewed.

Although the statute (*Nix. Dig.* 724, § 9,) in terms, relates merely to the title which a purchaser by virtue of a sheriff's sale under an execution at law shall acquire, the operation of it cannot be limited only to the case of a sale under the junior judgment, where no execution has been sued out upon the senior judgment, and levied on the land.

The junior judgment, by suing out and levying the first execution upon the land, acquires a priority of lien, which cannot be affected by any execution subsequently issued, nor by any mode in which the land may be sold. The issue of the execution upon the junior judgment, and its delivery, duly recorded, to the sheriff destroys the priority which was enjoyed by the older judgment, and transfers it to the junior judgment.

Executions against real estate have priority according to the time of their delivery, duly recorded, to the sheriff, irrespective of the dates of the judgments.

The same result which would follow from a sale on an execution issued on the junior judgments would follow a sale under a decree of this court. The order of the encumbrances cannot be changed or affected by the tribunal out of which the execution issues.

Where a statute, originally one, has its provisions broken up by a revision of the law, and incorporated in two different acts, the construction of these provisions cannot be affected by their change of collocation. They are *in pari materia*, and their construction must be the same as if they remained, as originally enacted, parts of the same statute.

---

The facts of this case sufficiently appear by the opinion of the Chancellor.

The case was argued *ex parte* by

*Mr. P. L. Voorhees,* for the mortgagee.

At common law, judgments were not liens upon lands, and would not have bound the premises—they are liens only by force of the statutes.

The question in this case arises by force of the statutes of this state entitled "an act respecting executions," &c., *Nix. Dig.* 247, and an act entitled "an act making lands liable to be sold for the payment of debts," *Nix. Dig.* 722.

The act entitled "an act to register mortgages" makes a mortgage void against a subsequent judgment creditor, or bona fide purchaser or mortgagee not having notice thereof, unless acknowledged according to law and duly recorded. *Nix. Dig.* 527, § 10, cannot in any way affect this question.

The statutes above referred to respecting executions and making lands liable to be sold for payment of debts, or such parts thereof as affect the question in this case, are taken from an earlier statute, passed in 1799, which was substantially the same as the first statute of this state making lands liable to be sold for payment of debts upon execution, passed in 1743, 17 Geo. 2. See 1 *Neville's Laws* 279 ; *Allison's Laws* 129.

By the 1st and 2d sections of this statute, lands are to be sold as chattels for the payment of debts, and by the subsequent sections, provisions are as to the manner of advertisements, sales, making deeds, &c.

By the 7th section of this act (which is substantially the same as the 9th section of the "act making lands liable to be sold for debts," *Nix. Dig.* 724,) it is provided that lands sold by execution shall be free and clear of all judgments and recognizances upon which no execution has been issued.

By the 11th section of the act of 1743 it is provided, that when sundry executions have issued, and sufficient cannot be levied to satisfy all, that such priority and preference as the law gives in the case of executions against personal estate only shall be given, and all disputes shall thereby be regulated and determined.

The preferences then given by law in cases of executions against personal property was, that the goods and chattels should only be bound from the actual delivery of the writ to the sheriff or officer. 3 *Bla. Com.* 420, 421.

To the act of 1743, a supplement was passed in 1779,

making provisions for the execution of deeds, &c., in case of a sale by a sheriff, and his death before the delivery of a deed, &c. *Wilson's Laws* 79.

The above acts remained in force until the revision by Judge Paterson, in 1799, when they were repealed, and an act entitled " an act making lands liable to be sold for the payment of debts" was passed. See *Paterson's Laws* 369.

By the 2d section of the last named act it is enacted, that no judgment should bind the land but from the time of the actual entry of such judgment in the minutes of the court.

By the 3d section it was enacted, that no writ of execution should bind property or goods but from the time such writ was delivered to the sheriff or officer, and for the manifestation of such time the sheriff should endorse on such writ the day of the month when he received the same, and that if two or more executions were delivered the same day, that which was first delivered should be first executed and satisfied.

By the 4th section it was enacted, that when sundry writs issued against goods and chattels, lands and tenements, &c., of the same person, and sufficient could not be found to satisfy all, then the like priority and preference should be given as is given in the preceding section in writs of execution against goods only, and all disputes respecting the same should be adjudged and determined accordingly.

The 3d and 4th sections seem to have been substituted by the revisor for section 11 of the act of 1743 ; section 3 seems only declaratory of what the common law was in reference to writs of execution against goods; and section 4 makes executions against land subject to the same rule as to priorities, and in effect continues the 11th section of the act of 1743.

Section 13 of this act (*Paterson's Laws* 371) is the same as the 7th section of the act of 1743, and renders land sold on execution free from all judgments, &c., on which no execution had been issued, &c.

The above act, as revised by Judge Paterson, was con-

Clement *v.* Kaighn.

tinued unaltered, so far as the sections affecting this question are concerned, until the revision of 1846, although there were some supplements added thereto.   See *Rev. Laws* 1820, 430 ; *Supplements ; Rev. Laws,* 1820, 670, 794.   See, also, *Elmer's Digest* 486 *et seq.*

Under this statute it is fully established at law that executions against real estate have priority according to the time of their delivery to the sheriff duly recorded.   *Elmer* v. *Burgin,* 1 *Penn.* 187 ; *Johnston* v. *Darrah,* 3 *Halst.* 282.   See also *Chaffees* ads. *Voorhees,* 4 *Zab.* 507.

By the revision of 1846 the above act was divided, a part of the sections being included in the act entitled "an act respecting executions," &c.   *Rev. Stat.* 1846, 976 ; *Nix. Dig.* 247, *viz.* section 5 of act of 1799 is section 1 of act of 1846, section 7 of act of 1799 is section 2 of act of 1846, and sections 3 and 4 of act of 1799, are sections 3 and 4 of act of 1846, and the remaining sections of the act of 1799 are included in the act entitled "an act making lands liable to be sold for the payment of debts."   *Rev. Stat.* 1846, 660 ; *Nix. Dig.* 722.

These two statutes, as they now stand, ought to be construed together, and such construction given to them as will give effect to both acts as if they were still one act.   They were approved the same day, and neither has priority as to date of enactment.   The sections of the two acts, as they now stand, or at least all the sections that control this case, were originally included in one act.

The revisors of 1846 had power to collate and revise public acts, and to reduce into one act different acts and parts of acts.   *Rev. Stat.* 1846, 39 ; *Laws* 1845, 202.

The revisors did not alter the sections of these two acts ; they are substantially the same as they were first drafted by Judge Paterson.   The revisors only placed them in two acts, instead of leaving them in one, as they were before the revision.

There being no alteration in the words of the statute, only

in the arrangement of the sections, we submit the law remains the same as before the revision.

The converse of this rule is decided in the case of *Murphy*, 3 *Zab.* 192, in reference to the revision of 1799 by Judge Paterson. I am not aware that any decision has been made in reference to the revision of 1846.

This being established, we submit that the judgment and execution of S. Coulter are subject to the judgments and executions of the other judgment creditors, as reported by the master.

That although the statute, *Nix. Dig.* 722, § 2, provides that judgments shall not bind lands but from the time of their actual entry in the minutes, yet this does not create a complete lien, but rather an inchoate one; it is a lien that is liable to be divested by any subsequent judgment upon which execution shall be first issued, recorded, and delivered to the sheriff or officer, in accordance with the 4th section of statute, *Nix. Dig.* 247.

That Coulter, having failed to issue an execution on his judgment until long after the executions issued upon the subsequent judgments were recorded and delivered to the sheriff, failed to complete or perfect his lien; hence his judgment and execution are postponed to and subject to the judgments and executions of the other judgment creditors.

That when a person, by his own *laches*, loses a right, courts will not help him regain that right.

That the judgment lien of Coulter was a mere legal right conferred by statute; that he failing to complete and perfect that lien, and having become subject to the liens or rights of others, this court will not reinstate him to the position he would have held if he had completed or perfected his lien by issuing execution. *Douglas* v. *Houston*, 6 *Ohio* 162.

The judgment and execution of Coulter, thus being subject to the judgments and executions of other judgment creditors, must be subject to the mortgage of the complainant, which is prior to all the other judgment creditors; that when one, holding a lien by his own act, makes it subject to another

independent lien, it must be subject to all intervening liens; in other words Coulter, having permitted his judgment to become subject to the other judgments and executions, cannot thereby give them a priority over the mortgage of the complainant because he had an inchoate lien prior in time to the mortgage of the complainant.

As against subsequent encumbrancers, &c., this court will give effect to the judgment and execution of Coulter only so far as the same could be enforced by execution at law. *Buchan* v. *Sumner*, 2 *Barb. Ch. R.* 194, 195; *Mower* v. *Kip*, 6 *Paige's Ch. R.* 88; 2 *White & T. Lead. Ca. Eq.* 108.

As we have shown, the judgment and execution of Coulter are subject to the judgments and executions of the other creditors; that the judgments and executions of the other creditors are subject to the mortgage of the complainant. Therefore the judgment and execution of Coulter are subject to the mortgage of the complainant, and directions should be made to establish the priorities in accordance therewith.

That this is the true result will further appear from the 9th section of the act for the sale of lands, *Nix. Dig.* 724. By the provisions of this section, if at any time after the judgments were obtained, and executions delivered to the sheriff in January, 1861, the judgment creditors had proceeded and sold the mortgaged premises upon their executions, they would have conveyed the land free from the judgment of Coulter but subject to the mortgage. See *Den* v. *Young*, 7 *Halst.* 300.

THE CHANCELLOR. By the interlocutory decree in this cause, it was referred to one of the masters of the court to ascertain and report the amount due to the complainant, and also the amount due, if anything, to sundry creditors upon judgments specified in the bill of complaint, and also to ascertain and report the order and priority of the said mortgage and judgments.

The master reports that Stephen Coulter, one of the defendants, recovered judgment against Charles Kaighn, the

E *

mortgagor, in the Supreme Court, on the twenty-third of January, 1858, upon which judgment there appeared to be due, at the date of the report, $12,103.93, but that no execution issued upon this judgment until June twenty-fifth, 1862, since the filing of the complainant's bill of complaint; that the complainant's mortgage, duly executed and acknowledged, was recorded on the twenty-sixth of December, 1859; that from January ninth, to June sixteenth, 1861, there were nineteen judgments recovered against the mortgagor, upon seventeen of which writs of *fieri facias* were issued to the sheriff of the county of Camden, where the premises lie.

Upon this state of facts, the master reports that he is unable to determine the order which the judgment of Coulter should occupy in the distribution of the proceeds of the sale of the mortgaged premises, whether it should be paid prior to the complainant's mortgage, thus having priority over the judgments to which it is subject, or whether it should be paid after the said judgments, thus losing its priority over the complainant's mortgage.

The entry of Coulter's judgment, being prior in point of time to the complainant's mortgage, is made by the statute a prior encumbrance. The judgment binds the land from the entry of the judgment on the records of the court. *Nix. Dig.* 761, § 2.

But the record of the complainant's mortgage, being prior to the entry of the defendant's judgments, is a prior encumbrance to those judgments. *Nix. Dig.* 550, § 10.

The order of priority of the several encumbrances, had no executions been issued upon the subsequent judgments, is perfectly clear. The embarrassment is created by the fact that executions were issued upon the junior judgments, and levied upon the land before any execution was issued upon the first judgment; and by the provision of the statute, which under such circumstances postpones the prior to the junior judgment, or in terms enables the junior judgment to sell the land clear of the encumbrance of the prior judgment.

Real estate in New Jersey was made subject to the pay-

ment of debts, and the proceedings of the sheriff thereon, regulated by the provincial act of December second, 1743. 1 *Neville* 279; *Allison* 129. By the first section of that act, it is declared that real estate within the province, belonging to any person indebted, shall be liable to and chargeable with all his just debts, and shall be chattels for the satisfaction thereof, in like manner as personal estates are seized, sold, or disposed of for the satisfaction of debts. By the third section, it is enacted that the sheriff shall make to the purchaser as good and sufficient a conveyance for the land purchased under the provisions of the act as the owner of the land could have made at the time of the judgment, and that the purchaser, by the said deed, shall be vested with as good and perfect an estate as the owner was seized of or entitled unto at or before the said judgment, and as fully as if the lands were sold and conveyed by the owner to the purchaser.

The sixth section declares that the purchaser shall hold the premises so purchased free and clear of all other judgments, by virtue whereof no execution has been executed upon the real estate so purchased. The seventh section directs that no process against real estate shall issue until the record of the judgment and the process shall have been inspected by one of the justices of the Supreme Court, and it shall have been certified by him that no error is therein apparent to him, and the said judgment and process shall be recorded in a book to be kept for that purpose before sending such process to the sheriff or other officer.

The tenth section directs that, where sundry executions have issued requiring the sale of real estate, such priority and preference shall be given as the law gives in the case of executions against personal estate only.

Then, as now, executions bound personal estate from the time of the delivery thereof to the sheriff. 2 *Bla. Com.* 421; *Nix. Dig.* 248, § 3.

These provisions of the act of 1743 have substantially continued in force till the present time. They will be found

embodied in the act of February 18th, 1799, § 1, 3, 4, 8, 12, 13; *Paterson* 369; *Rev. Laws* 430.

The second section of the act of 1799 provides that the judgment shall bind the lands only from the time of the actual entry of such judgment on the minutes or records of the court; whereas, by the common law, it operated from the first day of the term in which it was entered, and by the statute of frauds, 29 *Charles* 2, *ch.* 3, from the day of signing the same. 3 *Bla. Com.* 420.

In the revision of 1846, the act of 1799 was broken up, and its provisions incorporated in two different acts. The first, eighth, twelfth, and thirteenth sections are retained as the first, third, eighth, and ninth sections of the " act making lands liable to be sold for the payment of debts." *Nix. Dig.* 722. The third and fourth sections of the act of 1799 compose the third and fourth sections of the act respecting executions. *Nix. Dig.* 248.

The construction of these provisions cannot be affected by their change of collocation. They are in *pari materia,* and form parts of one entire system. Their construction must be the same as if they remained, as originally enacted, parts of the same statute. The acts of 1846 are cotemporaneous, both being approved upon the same day. If the fact had been otherwise, no inference could properly be drawn from the circumstance that one statute was prior in time to the other. Both were mere re-enactments of long subsisting laws, whose construction was well settled and whose operation was regarded as beneficial.

Reverting, then, to the plain provisions of the statutes, they declare that the judgment shall bind the lands from the time of the actual entry of the judgment on the records of the court. *Nix. Dig.* 722, § 2. It constitutes a valid encumbrance as against all subsequent alienations, mortgages, and judgments.

And if the land be sold and conveyed by virtue of an execution upon the judgment, the deed will vest in the purchaser the same estate in the premises as the defendant in

execution was entitled to at the entry of the judgment. *Nix. Dig.* 723, § 8.

But if the plaintiff in the first judgment neglect to sue out execution; he loses the priority to which he is otherwise entitled over subsequent judgments upon which executions are sued out. The provisions of the statute, so far as they are material to the present inquiry, are as follows : " Whereas other judgments, by virtue of which the sale under execution is made, might affect the real estate so sold, if no provision be made to remedy the same ; and whereas persons who have not taken, or will not take out executions upon their judgments, ought not to hinder or prevent such as do take out executions from having the proper effect and fruits thereof, therefore be it enacted, that the purchaser shall hold the real estate by him purchased as aforesaid free and clear of all other judgments whatsoever on or by virtue of which no execution has been taken out and executed on the real estate so purchased." *Nix. Dig.* 724, § 9.

The statute, in terms, relates merely to the title which a purchaser by virtue of a sheriff's sale under an execution at law shall acquire. It declares that the purchaser under *a sale* by virtue of an execution issued upon a junior judgment shall hold the land clear of all judgments upon which no execution has been taken out and executed on said land. In effect that gives to the junior judgment, by virtue of which the *land is sold*, priority over the senior judgment upon which no execution hath been sued out and executed upon the land. But the design of the statute is to give to the plaintiff in the junior judgment upon which execution is first sued out " the proper effect and fruits thereof." The operation of the statute cannot, therefore, be limited to the case of a sale under the junior judgment, where no execution hath been sued out upon the senior judgment and levied upon the land. For if that were so, it would enable the plaintiff in the prior judgment to sue out and levy his execution upon such judgment after the levy under the execution upon the junior judgment, and thus defeat the express

object of the statute by preventing the plaintiff in the junior execution "from obtaining the effect and fruit thereof." To give effect, therefore, to the statute, it is necessary to hold that the plaintiff in the junior judgment, by suing out and levying the first execution upon the land, acquires a priority of lien, which cannot be affected by any execution subsequently issued, nor by any mode in which the land may be sold. The issue of the execution upon the junior judgment, and its delivery, duly recorded, to the sheriff, destroys the priority which was enjoyed by the older judgment, and transfers it to the junior judgment. It reverses the priority of the encumbrances, no matter in what mode the land may be sold. This, I think, must have been the result if there were no further provision upon the subject. But the statute further declares, that where sundry executions issue against the goods and lands of the same person, then the like priority and preference shall be given as is given in writs of execution against goods only, *viz.* they shall bind the property from the time that the writ, duly recorded, shall be delivered to the sheriff. *Nix. Dig.* 248, § 3, 4; 722, § 3.

It is well settled, in the construction of these provisions, that executions against real estate have priority according to the time of their delivery, duly recorded, to the sheriff, irrespective of the dates of the judgments. *Elmer* v. *Bursen, Penn.* 187; *Johnston* v. *Darrah,* 6 *Halst.* 282; *Voorhees* v. *Chaffees,* 4 *Zab.* 507.

The same order of priority must obtain where the sale of the land is made by virtue of a decree in equity. The proceeds of the sale must be distributed according to the order of the *legal* priority of the encumbrances.

The encumbrance of Coulter's judgment upon the mortgaged premises, by reason of his failure to sue out execution, must be postponed to the encumbrance of the junior judgments upon which executions have been sued out and executed. As an inevitable consequence, it must be postponed, also, to the encumbrance of the complainant's mortgage, which is prior to the junior judgments, and whose priority

Clement *v.* Kaighn.

cannot be affected by any *laches* of the plaintiff in the prior judgment. The plaintiff in the prior judgment can prevent that consequence only by satisfying the subsequent judgments.

If the land be sold by virtue of an execution issued upon the junior judgment, the purchaser would take title clear of the prior judgments, but subject to the mortgage. In effect, the prior judgment would be postponed not only to the subsequent judgments, but also to the mortgage. This is the inseparable consequence of the *laches* of the plaintiff in not suing out execution upon his judgment. The same result will follow from a sale under a decree of this court. It never could have been contemplated that the order of the encumbrances should be changed or affected by the tribunal out of which the execution issued. This would put it in the power of the mortgagee or of the prior judgment creditor, by purchasing the mortgage, to defeat the purpose of the statute, and the rights of the junior judgment creditor acquired under it.

The order of priority of the respective encumbrances will be decreed accordingly.