The present inquiry is to determine the order in which several judgments against a tenant in common of certain real estate shall participate in the distribution of the proceeds which have been realized from a partition sale of the land. No material facts are in dispute. The partition proceedings are in this court and the proceeds of sale are here on deposit awaiting an order of distribution. All of the judgments were entered prior to the partition sale and became judgment liens on the undivided share of the judgment debtor. The conflicting claims arise under executions issued on the judgments. *Page 251 
The several judgments here in question were entered on the dates here noted and acquired their liens as judgments in the order here named:
1. Judgment of Burlington County Supply and Produce Company, November 10th, 1928.
2. Judgment of Fenimore Brothers, November 28th, 1928.
3. Judgment of William H. Absalom, December 18th, 1928.
4. Judgment of Henry F. Mitchell Company, May 4th, 1929.
5. Judgment of F.S. Royster Guano Company, November 6th, 1929.
1. On the judgment above marked as No. 1 execution was issued and delivered to the sheriff November 10th, 1928, returnable December term, 1928, of Burlington county circuit court. On November 16th, 1928, the sheriff made a levy on certain personal property which is not here involved and need not be here considered, but added to his levy, after a description of the personal property, the following: "Together with all the other goods and chattels, lands and tenements of the above-named defendant in whose hands soever the same may be, subject to legal encumbrances, value one dollar." It is clear that this omnibus levy was ineffective to create an execution lien on the real estate of the judgment debtor, since it is an essential element of a valid levy on real estate that it shall adequately identify the land. Canfield v. Browning, 69 N.J. Law 553. No other levy was made of that execution prior to its return day, and no valid levy of it could be made thereafter. Matthews v. Warne,11 N.J. Law 295, 350; Kemble v. Harris, 36 N.J. Law 526, 530;Canfield v. Browning, supra (at p. 555); Olden v.Sassman, 72 N.J. Eq. 637. Accordingly that judgment now must be held to rank for purposes of distribution as a mere judgment lien as of the date of its entry.
2. On the judgment above marked as No. 2, execution was issued and delivered to the sheriff December 3d 1928, returnable at the December term of the Burlington county circuit court. On December 4th, 1928, a levy was made in the *Page 252 
same form as the levy of judgment No. 1, above quoted. Since no further levy of that execution was made prior to its return day, that judgment must now rank at distribution as a mere judgment lien as of its date of entry.
3. On the judgment above marked as No. 3, execution was issued and delivered to the sheriff December 28th, 1928, returnable at April term of Burlington county circuit court. No levy was made of that execution. September 25th, 1929, an alias execution was issued and delivered to the sheriff returnable at December term, 1929. On September 25th, 1929, a specific levy was made of that alias execution on the real estate here in question. It will be noted that at the time that alias writ was received by the sheriff and the levy of it was made the period within which levies of the prior executions under judgments above numbered 1 and 2 had expired. Had those two prior executions been alive at that time it would have been the duty of the sheriff to also levy the prior executions, and the several levies would then have related back to the time of the delivery of the writs to the sheriff, irrespective of the order of the mechanical acts of making the levies. McAdams v. Mundy, 79 N.J. Law 480. But after the return day of the prior writs those writs were dead for purposes of levy; accordingly that levy establishes the lien of that judgment as an execution lien as of September 25th, 1929. Since that is the first valid levy made on the real estate that judgment must first participate in the distribution in this partition suit of the proceeds of sale of the judgment debtor's interest in the land.
4. On the judgment above marked as No. 4, no execution has been issued. It must rank as a mere judgment lien as of its date of entry.
5. Shortly prior to the time the judgment above marked No. 5 was entered this partition suit was instituted. June 2d 1929, execution was issued and delivered to the sheriff, returnable at October term, 1930, of the supreme court. On March 13th, 1930, the real estate embraced in the partition suit, including the share of the judgment debtor, was sold by a special master appointed in the partition suit for that purpose. *Page 253 
On June 5th, 1930, while that execution was still alive and while the proceeds of the partition sale were still in the hands of the special master, that execution was levied by the sheriff in the following manner: "On all the right, title and interest of the said Armitt F. Darnell [judgment debtor] of, in and to the proceeds of a certain sale of real estate made by Ernest Watts, special master in chancery, in a certain cause in chancery of New Jersey, between Beatrice D. Fredd et vir., complainants, and Armitt F. Darnell et ux., et al., defendants, pursuant to an advertisement of said special master's sale which is attached hereto, and which described the real estate by metes and bounds, and which proceeds of sale are now in the hands of Ernest Watts, special master in chancery before referred to, which said interest of Armitt F. Darnell amounted to one thousand seventy-eight dollars and eighty-four cents ($1,078.84), as by a report of said special master in said cause will more fully and at large appear, reference being had thereto."
It will be noted that this levy was on the right, title and interest of the judgment debtor in the proceeds of the partition sale then in the hands of the special master of this court. It is a general rule that money or other property in the hands of an officer of a court is regarded as being in custodia legis, and in consequence ordinarily cannot be reached by execution in the absence of legislative authority. That rule appears to be based upon a necessity, incident to orderly judicial procedure, for any court which has acquired primary jurisdiction over property to continue the exercise of that jurisdiction free from embarrassments or conflicts with other courts arising from subsequent claims against the same property. Since a levy ordinarily embodies the elements of dominion and control of the property levied upon, such a levy upon property in custodialegis may seriously interfere with orderly administration by the primary tribunal. Accordingly the test of immunity of propertyin custodia legis may in general be said to be whether substantial confusion or embarrassment to the initial jurisdiction would result from the enforcement of process against the property by another tribunal. This view *Page 254 
is exemplified in Conover v. Ruckman, 33 N.J. Eq. 303, where it is pointed out that an attachment may be levied on money incustodia legis as a credit of the attachment debtor, but the attaching creditor would be denied the right to recover the money by proceedings on scire facias, since in the former situation the initial court could fully control the administration of the fund and give due consideration to the rights of all persons in interest, while the latter remedy would embarrass the performance of that duty. Formerly an execution could not be levied on a credit. By the terms of the act of March 30th, 1915 (Cum. Supp.Comp. Stat. pp. 1205, 1206), "rights and credits" may be levied upon "in the manner in which property is attached under writs of attachment against non-resident debtors." As already disclosed the levy here in question was made on the "right, title and interest" of the judgment debtor in the fund in the hands of the special master. Since the present statute authorizes a levy on "rights and credits" of a judgment debtor in the manner in which property is attached under writs of attachment against non-resident debtors it seems clear that the levy here in question may be regarded as in the nature of an attachment of the interest of the judgment debtor in the fund then in the hands of the special master. Since that time the money has been paid into the treasury of this court and this court can now appropriately administer the fund in the orderly procedure of its decree of distribution in the partition suit, without confusion or embarrassment of jurisdictions. In this view the lien of this judgment will necessarily rank for purposes of distribution as superior to judgments above numbered 1, 2 and 4. It is not herein overlooked that for most purposes the fund arising from the sale of land in partition suits, though in fact money, is regarded in equity as in the nature of real estate. But after the partition sale the title to the original real estate had been transmitted to the purchaser at the sale, and a co-tenant retained only a right to participate in the distribution of the fund; it is that right which has been levied upon, under authority of the act of 1915, in the manner in which property is attached under writs of attachment *Page 255 
against non-resident debtors, and such levy in no way embarrasses the due administration of the fund through a decree of distribution in the partition suit, since the levy on the "right, title and interest" of the judgment debtor in the fund will now be given recognition as a valid levy and will establish the execution lien as of the date of the delivery of that execution to the sheriff.
Judgements above numbered 1 and 3 were also against Ethel Z. Darnell. They will participate in the distribution of her share with No. 3 accorded the superior rank.
The conclusions here reached accord with the report of the master to whom a reference was made to determine the priorities of the several judgments; the exceptions to the master's report will be overruled.