103 N.J. Super. 307 (1968)
247 A.2d 151
THE WESTERN SAVINGS FUND SOCIETY OF PHILADELPHIA, PLAINTIFF,
v.
JEAN N. GOODMAN, ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided October 17, 1968.
*308 Mr. David Baker for defendants Seaboard Finance Company, Hazel L. Pietras and Nesbitt Sales Company.
Mr. Chauncey L. Barrett for defendant New Jersey Bell Telephone Company.
*309 Mr. James S. Cafiero for defendant J.J. Hone, a corporation (Messrs. Cafiero & Balliette, attorneys).
Mr. John Corino for defendant David A. Elliott (Messrs. Kay & Corino, attorneys).
Mr. Joseph Tenenbaum for defendants Robert Hepburn and Elizabeth Hepburn.
Mr. Palmer M. Way, Jr. for defendant Thomas B. Benner, Jr.
HORN, J.S.C.
The issue before me deals with the priorities of judgment creditors in surplus funds arising from a sheriff's sale resulting from a mortgage foreclosure. R.R. 4:82-4 provides that an application may be made for surplus moneys in foreclosure actions at any time after the sale, and may be heard by the court on motion or notice to all defendants whose claims are not directed in the mortgage foreclosure execution to be paid out of the proceeds of the sale. All of the claimants to the fund are holders of judgments which were liens upon the lands covered by the foreclosed mortgage.
The facts are not in dispute. If they were, findings of fact would be required. R.R. 4:44-4; Paterson Stove Repair Co. v. Ritzer, 123 N.J.L. 145 (Sup Ct. 1939); Van Dine v. Sussex, 5 N.J. Misc. 1066, 139 A. 342 (Sup. Ct. 1927). On May 14, 1968 final judgment in the foreclosure action was entered, and on May 20, 1968 a writ of execution was issued out of this court commanding the sheriff of Cape May County to sell lands and premises of defendant Goodman in order to satisfy the amount due to plaintiff on its mortgage, and in case more money should be raised by such sale than would be sufficient so to do, then to deposit the surplus money with the clerk of this court.
On July 2, 1968 the sheriff sold said land pursuant to the writ and deposited with the clerk of this court the sum of $1,913.35 as the surplus money arising from such sale.
*310 None of the judgment creditors issued execution upon their respective judgments except J.J. Hone, a corporation, (Hone) as hereinafter related.
Since the sum total of the judgments recorded before Hone's would exhaust the surplus fund, Hone will receive no payment from the fund unless it is entitled to the priority of payment claimed by it in this proceeding.
Orders to show cause why distribution of the fund in court should not be made were issued in July 1968 and served upon the parties in interest. However, due to an objection to the sale made by the purchaser, no disposition of the applications was made. The objection was settled and the disposition of the objection was evidenced by an order entered on August 7, 1968.
On September 9, 1968 a petition was filed by New Jersey Bell Telephone Co., one of the judgment creditors, for distribution of the surplus moneys, and an order to show cause based upon said petition was issued on the same date, directing all judgment creditors, including Hone, to show cause "why an order should not be made directing the withdrawal and payment of the surplus moneys deposited with the Clerk of the Court." On September 16, 1968 copies of the petition and order to show cause were mailed to each judgment creditor and interested party, including Hone, pursuant to the terms of said order.
Subsequently another judgment creditor served notice of motion upon each of the others for the same purpose of obtaining an order determining the priorities and directing distribution. Both the order to show cause and the motion were made returnable October 4, 1968.
On said return day Hone requested the court to direct that its judgment be paid in full because, allegedly, its judgment lien was entitled to priority as against the lien of all other judgments. Hone had docketed its judgment in the Superior Court (from the County Court) on September 24, 1968. On the same date it had caused execution to be issued to the sheriff of Mercer County with direction to levy upon *311 the fund on deposit with the clerk of the court. The levy was made on October 2, 1968, just two days before the return day of the respective applications.
It cannot be disputed that all of the activity recited above with respect to the Hone judgment, from the time of the docketing of the judgment in the Superior Court to the time the levy was made, was precipitated by the realization that ordinarily there were insufficient funds on deposit with the clerk to apply toward the Hone judgment. None of this activity took place until after service of the order to show cause issued upon the application of the New Jersey Bell Telephone Company.
Hone relies upon Vineland Savings & Loan Ass'n v. Felmey, 12 N.J. Super. 384 (Ch. Div. 1951) as support for its claim of priority. In that case Judge (now Justice) Haneman had before him an application for surplus moneys which also arose from a sale held in a mortgage foreclosure on June 21, 1950. He dealt with the issue of the relative priority of the liens of two judgment creditors. One of them, Corn Exchange National Bank and Trust Co. (Corn Exchange), was joined as a party defendant by reason of a judgment which had been docketed in the office of the clerk of the county on August 18, 1949. Subsequently this judgment was assigned to the United States of America.
The judgment of the other creditor, Millville National Bank (Millville), was docketed in the County Court on June 22, 1950 and in the Superior Court on August 2, 1950.
On August 10, 1950 execution on the judgment of Millville was issued and levy made by the sheriff of Mercer County on the surplus moneys which had been deposited with the clerk of this court. Neither Corn Exchange or the United States of America had caused execution to be issued.
Justice Haneman held first, that following Fredd v. Darnell, 107 N.J. Eq. 249 (Ch. 1930), money on deposit with the court clerk is considered to be in custodia legis; but notwithstanding that, could be levied upon if substantial *312 confusion or embarrassment would not result. He found that the levy would not create confusion or embarrassment.
Second, he recognized the effect of R.S. 2:26-137 (now N.J.S. 2A:17-39). This statute has long been interpreted to direct that the mere execution and levy on real estate by a judgment creditor results in a priority for such judgment creditor over all other judgment creditors, regardless of the date of docketing. Clement v. Kaighn, 15 N.J. Eq. 47 (Ch. 1862).
Third, he recognized the rule that surplus funds resulting from a sale under a mortgage foreclosure of realty are deemed to retain the character of land "insofar as the liens or the vested rights in the realty are concerned."
Accordingly, he held that Millville secured a priority of payment solely as the result of the levy upon the "right, title and interest" of the mortgagors in said fund as well as the "rights and credits."
Vineland Savings & Loan Ass'n v. Felmey, supra, has been cited with approval. Silver v. Williams, 72 N.J. Super. 564 (App. Div. 1962); Naglieri v. Trabattoni, 20 N.J. Super. 173 (App. Div. 1952) (where funds on deposit with a court were levied on but which did not involve priorities of creditors).
In Silver v. Williams it was held that a junior judgment creditor secured a priority of payment with respect to mortgage foreclosure sale surplus funds by reason of a levy on the right, title and interest of the mortgagor in the subject lands while the foreclosure action was pending and before final judgment was entered. See also Riverside Building and Loan Ass'n v. Bishop, 98 N.J. Eq. 508 (Ch. 1925).
Our cases, including Fredd v. Darnell, supra, generally hold that the "confusion or embarrassment" referred to where a levy is made upon funds in custodia legis result from levies made by virtue of executions issued out of a different court or courts than those whose officers are in possession of the funds.
*313 Crane v. Freese, 16 N.J.L. 305 (Sup. Ct. 1837), which first enunciated the rule followed by our courts, involved money in a sheriff's hands as the result of one levy, which was then sought to be taken by another levy to satisfy a different execution in his hands against the judgment creditor plaintiff in the first execution and defendant in the second.
Chief Justice Hornblower said:
"* * * [U]pon reflection, I am satisfied the proceeding is wrong upon principle  wrong, not only, because the money is not the money of the defendant in attachment, until it has been paid over to him by the sheriff, or in some other way definitively designated as his, or appropriated exclusively to his use; but wrong, because it would lead to embarrassment and confusion, to permit one process of the court to intercept moneys raised on another, while in the hands of the officer. But more than this, it might frequently lead to injustice."
In Conover v. Ruckman, 33 N.J. Eq. 303 (E. & A. 1880), the court explained the effect of the holding in Crane v. Freese, supra, and stated:
"* * * [T]he court also adjudged that the writ of attachment was well served on the moneys due the plaintiff in the execution and in the sheriff's hands, as rights and credits of the defendant in attachment in the hands of the sheriff; and the duty of the officer, in that event, was pointed out. He was to obey the command of the writ of execution under which he raised the money  bring the money into the court out of which the execution issued, and give notice to the plaintiff in the attachment, or to the creditors, that he had done so; and the court would then control the application of the funds and protect its officer in the discharge of his duty." (Emphasis added)
See also Hoffman v. Kahn, 119 N.J. Eq. 171 (Ch. 1935); Bernstein v. New Jersey Bankers Securities Co., 115 N.J. Eq. 347 (Ch. 1934).
In 33 C.J.S. Executions § 55 c., p. 187 (1942), it is stated:
"The doctrine is well settled that money realized by an officer by virtue of an execution, or money paid into court, cannot be levied on as the property of the judgment creditor, it being regarded as in custodia legis."
*314 N.J.S. 2A:17-39, upon which is based the authority to give priority to a judgment creditor who first levies, was not intended to be operative in a case such as the one at bar. Once the funds are paid into court it is only a matter of proper distribution; not a matter of securing a lien or obtaining a priority. The confusion or embarrassment referred to in Crane v. Freese, supra, was with respect to dealings between courts; not in determining priorities where the liens and the priorities thereof were already established before the court's officer received the moneys and they came under the control of the court.
No doubt when the surplus moneys arose in this case, they stood in the place of the land, Vineland Savings & Loan Ass'n v. Felmey, supra; otherwise, judgment creditors would have lost their liens completely. The liens which existed automatically attached to the surplus funds.
In a case such as here presented, where money is paid into court, it seems that since a judgment entered even after the deposit but before distribution would establish the right to participate in the fund, equitably a levy upon it should not be recognized as effecting a priority to payment against other lien holders.
Crane v. Freese went no further than to establish that where a levying judgment creditor had caused a fund to be placed in the hands of the sheriff, in which he had an interest, a levy upon his rights and credits therein by his own judgment creditor would be recognized. In such case the officer of the court would be guided by the court in making disbursement, and the officer would thereby obtain the protection of the court.
In the case at bar, for all practical purposes the mortgagor had no interest whatever in the fund. There was no attachable right or credit.
In 59 C.J.S. Mortgages § 800 b, p. 1531 (1949), it is stated:
*315 "Liens inferior to the lien of the mortgage foreclosed attach to the surplus proceeds of sale in the same order and relative priority which they held with reference to the premises before the foreclosure, and must be paid in that order, unless some equitable right demands a different order of payment, as in the case where one creditor can found a claim to preference on his superior vigilance and activity * * *."
Why, therefore, should this court countenance a race to secure a priority when the method of acquiring it, to wit, by issuing execution and levying upon a fund in court, is only an empty gesture from the standpoint of actually reducing the funds to possession? Under our modern concepts, equitably a priority in payment should not rest upon an artificial, hollow and unsubstantial act.
Hone, in this instance, knew that its levy would not result in the delivery of the funds or any part thereof to it as a direct result of this action. It knew that it would in no way accelerate the distribution of the funds either to it or any others. Its sole and only purpose was to endeavor to obtain a priority in payment to which it would not otherwise be entitled.
Vineland Savings & Loan Ass'n v. Felmey, supra, is clearly distinguishable from the case at bar because in this case the levy was not made until after parties already entitled to distribution had moved to obtain the release of the deposited funds.
Although N.J.S. 2A:17-39 encourages the "vigilant" judgment creditor to gain "the proper effect and fruits thereof," it does not contemplate that a party should be rewarded by causing a levy to be made after judgment creditors already have initiated proceedings to obtain distribution. Cf. Bogert v. Lydecker, 45 N.J.L. 314 (Sup. Ct. 1882); Williams v. Gilbert, 37 N.J. Eq. 84 (Ch. 1883) and Lovejoy v. Lovejoy, 31 N.J. Eq. 55 (Ch. 1879).
These other judgment creditors, in pursuing their rights to distribution, were even more vigilant than Hone, and are entitled to the "proper effect and fruits of their vigilance. *316 Their applications and efforts toward securing payment were tantamount to a levy. Confusion and embarrassment might well result if the court should uphold Hone's claim to priority.
A fair interpretation of Vineland Savings & Loan Ass'n v. Felmey, supra, does not require that Hone should succeed in its attempt to accomplish a priority of payment.
The Proposed Revision of the Rules Governing the Courts of the State of New Jersey, submitted November 1966 by the Supreme Court's Coordinating Committee on the Revision of the Rules of Court, contains in the part pertaining to foreclosure of mortgages and tax certificates the following:
"4:64-2(b) Effect of Action on Priorities. The priorities of defendants' liens or encumbrances shall be fixed and determined as of the date of the commencement of the foreclosure action, unless the parties have otherwise agreed."
It is hoped that this proposed rule will ultimately be adopted.
For these reasons I conclude that distribution of the surplus moneys should be made in accordance with the priorities existing when the funds were deposited with the clerk of this court.