111 N.J. Super. 82 (1970)
267 A.2d 545
JEROLD BURG AND SESLYE BURG, HIS WIFE, PLAINTIFFS,
v.
PATRICK J. EDMONDSON, JOANNE MARY EDMONDSON, HIS WIFE, LINCOLN NATIONAL BANK, A CORPORATION, THE DINERS' CLUB, INC., A CORPORATION, ROBINSON LUMBER COMPANY, A CORPORATION, ASSOCIATED MERCHANTS ACCEPTANCE, INC., A CORPORATION, THE FIRST PENNSYLVANIA BANKING AND TRUST COMPANY, A CORPORATION, ACCREDITED CONSUMER DISCOUNT COMPANY, INC., A CORPORATION, AND PHILADELPHIA NATIONAL BANK, A BANKING CORPORATION OF THE UNITED STATES OF AMERICA, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided June 19, 1970.
*83 Mr. Albert B. Melnik for plaintiff (Messrs. Melnik, Tarter, Muller and Morgan, attorneys).
Mr. Patrick G. Mahoney for defendants Patrick J. Edmondson and Joanne Mary Edmondson.
Mr. Raymond Saltzman for defendant Lincoln National Bank.
Mr. Samuel Gerstein for defendants The Diners' Club, Inc., Robinson Lumber Co. and Accredited Consumer Discount Company, Inc. (Messrs. Epstein, Fluharty, Freeman and Gerstein, attorneys).
Mr. Sidney R. Granite for defendant Associated Merchants Acceptance, Inc. (Messrs. Granite and Granite, attorneys).
Mr. Madison S. DuBois for defendant The First Pennsylvania Banking and Trust Co. (Messrs. DuBois, Maiale and DuBois, attorneys).
Mr. Michael N. Kouvatas for defendant Philadelphia National Bank.
Mr. Ralph J. Kmiec for petitioner James W. Hamilton, Jr. (Messrs. Kmiec & Palumbo, attorneys).
WICK, J.S.C.
This is a motion for payment of surplus monies from a fund paid into court.
*84 In the underlying suit, Jerold Burg sought a partition of a certain tract owned by him and defendant Edmondson as partners.
Judgment was entered determining that partition was not equitable and ordering that the land be sold. The proceeds of the sale were to be distributed between plaintiff and defendant according to a formula not material to this motion. Defendant's share was to be applied to the liens of seven specified creditors, who were made parties to the suit and filed their claims therein.
By an order dated May 2, 1969 this court directed Burg to sell the land in question and deposit Edmondson's share with the Superior Court Clerk, to be withdrawn upon application to this court "by the judgment creditors of Patrick J. Edmondson and Joanne Mary Edmondson, his wife, * * *."
Nothing further was heard in this matter until May 21, 1970, when the attorney for James W. Hamilton, Jr. brought the motion now before the court requesting an order directing payment of the funds of Edmondson held by Burg. Apparently, unbeknownst to the court or the other creditors, Burg did sell the land in question, thereby realizing Edmondson's share. This sum has since been deposited with the clerk of the court. Hamilton was not one of the seven creditors named in the complaint or the amended order; however, he brings this motion to establish his priority to the surplus funds.
It is undisputed that judgments against Patrick J. and Joanne Mary Edmondson were docketed in the following order. On May 3, 1968, Lincoln National Bank; on July 11, 1968, First Pennsylvania Banking and Trust Co.; on July 24, 1968, Accredited Consumer Discount Co., Inc.; on August 19, 1968, Philadelphia National Bank, and on February 25, 1970, James W. Hamilton, Jr. The only creditor who levied on the land in question was James W. Hamilton, Jr., on April 16, 1970.
*85 The issue now is to determine the order of priority of the judgment creditors. Petitioner Hamilton relies on the rule that priority among judgment creditors is determined by order of levy of execution, or the date of entry of judgment if no execution was issued. This rule gives a judgment junior in time priority of lien over a senior judgment by first levying upon the land under an execution issued on the judgment. That this is the general rule of law in this State cannot be questioned. N.J.S.A. 2A:17-39, as interpreted by Clement v. Kaighn, 15 N.J. Eq. 47 (Ch. 1862), and followed consistently  see Silver v. Williams, 72 N.J. Super. 564, 567 (App. Div. 1962); Western Savings Fund Society of Philadelphia v. Goodman, 103 N.J. Super. 307, 312 (Ch. Div. 1968); Vineland Savings & Loan Ass'n v. Felmey, 12 N.J. Super. 384 (Ch. Div. 1950).
Out of this general rule arose the issue of whether a levy on monies held in custodia legis should also be entitled to priority. The first case which dealt with this issue was Fredd v. Darnell, 107 N.J. Eq. 249 (Ch. 1930). That case involved a levy on surplus monies held by a court-appointed special master in a partition suit. The issue was squarely presented of whether a levy on funds in custodia legis gave a subsequent judgment creditor priority over a prior judgment creditor who had not executed on his judgment. The court upheld the levy and priority, stating the law to be as follows:
It is a general rule that money or other property in the hands of an officer of a court is regarded as being in custodia legis, and in consequence ordinarily cannot be reached by execution in the absence of legislative authority. That rule appears to be based upon a necessity, incident to orderly judicial procedure, for any court which has acquired primary jurisdiction over property to continue the exercise of that jurisdiction free from embarrassments or conflicts with other courts arising from subsequent claims against the same property. Since a levy ordinarily embodies the elements of dominion and control of the property, levies upon property in custodia legis may seriously interfere with orderly administration by the primary tribunal. Accordingly the test of immunity of property in custodia legis may in general be said to be whether substantial confusion or embarrassment *86 to the initial jurisdiction would result from the enforcement of process against the property by another tribunal. [107 N.J. Eq. at 253].
Vineland Savings & Loan Ass'n v. Felmey, supra, involved a levy on surplus monies from a foreclosure sale which had been deposited in court. Judge (now Justice) Haneman quoted the passage from Fredd cited above and determined that the levy was proper. He then concluded that R.S. 2:26-137 (now N.J.S.A. 2A:17-39), as interpreted by Clement v. Kaighn, supra, required the levy be given priority.
Silver v. Williams, 72 N.J. Super. 564 (App. Div. 1962), touched only briefly on the issue which was apparently not contested in that suit. The court said:
Standard does not contend that Mitchell is adversely affected by the fact that the execution and levy here took place subsequent to the institution of the foreclosure. Nor would such a contention have merit. In Vineland Savings & Loan Ass'n v. Felmey, supra (12 N.J. Super. 384), priority in foreclosure surplus moneys was adjudicated in favor of a junior judgment lien which was the basis of levy on the surplus money fund subsequent to the foreclosure sale. [at 571.]
In neither Fredd nor Vineland Savings & Loan Ass'n (or Silver v. Williams which relied on the latter) did the court consider the equity of the result reached or its fidelity to the purpose of N.J.S.A. 2A:17-39.
The first case to take those considerations into account was Western Sav. Fund Soc. of Phila. v. Goodman, 103 N.J. Super. 307 (Ch. Div. 1968), which also concerned a levy on surplus monies from a foreclosure sale held by the clerk of the court. Judge Horn attempted to distinguish the other cases by holding that the order to show cause for distribution by the other judgment creditors in his case was equivalent to a levy by them prior to the levy of the junior judgment creditor. The case cannot be read so narrowly, however.
In commenting upon the applicability of N.J.S.A. 2A:17-39 to the issue, the court stated:
*87 N.J.S. 2A:17-39, N.J.S.A. upon which is based the authority to give priority to a judgment creditor who first levies, was not intended to be operative in a case such as the one at bar. Once the funds are paid into court it is only a matter of proper distribution; not a matter of securing a lien or obtaining a priority. [at 314]
This court must agree with that conclusion on the reasoning used by Clement v. Kaighn, 15 N.J. Eq. 47 (Ch. 1862), to make N.J.S.A. 2A:17-39 applicable to the priority of levying creditors when by its own terms it refers only to the interest of purchasers under a levy. Clement stated the rule as follows:
The statute, in terms, relates merely to the title which a purchaser by virtue of a sheriff's sale under an execution at law shall acquire. It declares that the purchaser under a sale by virtue of an execution issued upon a junior judgment shall hold the land clear of all judgments upon which no execution has been taken out and executed on said land. In effect that gives to the junior judgment, by virtue of which the land is sold, priority over the senior judgment upon which no execution hath been sued out and executed upon the land. But the design of the statute is to give to the plaintiff in the junior judgment upon which execution is first sued out "the proper effect and fruits thereof." The operation of the statute cannot, therefore, be limited to the case of a sale under the junior judgment, where no execution hath been sued out upon the senior judgment and levied upon the land. For if that were so, it would enable the plaintiff in the prior judgment to sue out and levy his execution upon such judgment after-the levy under the execution upon the junior judgment, and thus defeat the express object of the statute by preventing the plaintiff in the junior execution "from obtaining the effect and fruit thereof." To give effect, therefore, to the statute, it is necessary to hold that the plaintiff in the junior judgment, by suing out and levying the first execution upon the land, acquires a priority of lien, which cannot be affected by any execution subsequently issued, nor by any mode in which the land may be sold. The issue of the execution upon the junior judgment, and its delivery, duly recorded, to the sheriff, destroys the priority which was enjoyed by the older judgment, and transfers it to the junior judgment. It reverses the priority of the encumbrances, no matter in what mode the land may be sold. This, I think, must have been the result if there were no further provision upon the subject. But the statute further declares, that where sundry executions issue against the goods and lands of the same person, then the like priority and preference shall be given as is given in writs of execution against goods only, viz. they shall bind the property from the time that the writ, duly recorded, shall be delivered to the sheriff. [15 N.J. Eq. at 57-58]
*88 The equitable reason for reaching this result is stated later in the case at page 59, when the court said:
This is the inseparable consequence of the laches of the plaintiff in not suing out execution upon his judgment.
This concept of aiding the diligent judgment creditor and penalizing the sleeping one is not present in the case of a levy on a fund in court. In this case, for example, seven judgment creditors answered the law suit for partition and proved their claims. By an order of May 2, 1969 Burg was made, in effect, a trustee for the court to sell the land and deposit the funds in court. The other creditors waited patiently to be notified that this was done to collect their debts.
It was this situation that prompted Judge Horn to ask:
Why, therefore, should this court countenance a race to secure a priority when the method of acquiring it, to wit, by issuing execution and levying upon a fund in court, is only an empty gesture from the standpoint of actually reducing the funds to possession? Under our modern concepts, equitably a priority in payment should not rest upon an artificial, hollow and unsubstantial act. [103 N.J. Super. at 315]
His conclusion was that
Although N.J.S. 2A:17-39, N.J.S.A. encourages the "vigilant" judgment creditor to gain "the proper effect and fruits thereof," it does not contemplate that a party should be rewarded by causing a levy to be made after judgment creditors already have initiated proceedings to obtain distribution. [Ibid.]
The true rule set down by Western Saving seems to be:
In a case such as here presented, where money is paid into court, it seems that since a judgment entered even after the deposit but before distribution would establish the right to participate in the fund, equitably a levy upon it should not be recognized as effecting a priority to payment against other lien holders. [103 N.J. Super. at 314]
This rule has been adopted by R. 4:64-2(b), at least insofar as it applies to foreclosures. There is no reason in *89 logic or equity why this same result should not apply to proceeds from a partition sale.
This court feels the reasoning set forth in Western Saving and R. 4:64-2(b), as expounded herein, are superior to that used in Fredd and Vineland Savings and should be followed. This court perceives the correct rule of law to be that priorities of claims are not susceptible to change after the court has taken jurisdiction over the property in question. Therefore, the surplus monies will be distributed among the judgment creditors according to the order of the dates of their judgments in this case.