242 N.J. Super. 567 (1990)
577 A.2d 872
SHARON M. CULP, PLAINTIFF,
v.
JOHN F. CULP, III, DEFENDANT.
Superior Court of New Jersey, Chancery Division, Family Part Monmouth County.
Decided June 11, 1990.
Noel Tonneman for plaintiff (Wilentz, Goldman & Spitzer, attorneys).
John F. Culp, pro se, did not appear.
Robert J. Chalfin, receiver, pro se.
Gianni Donati for Lexon Properties, Inc. (Greenbaum, Rowe, Smith, Ravin, Davis & Bergstein, attorneys).
*568 BASSLER, J.S.C.
In this matrimonial action, the receiver appointed by this court seeks, among other things, to vacate a writ of execution and levy issued against the receiver's bank account on behalf of a judgment creditor of defendant husband. The application is but a small skirmish in a larger matrimonial war[1] being waged in New Jersey, Pennsylvania and Maryland by a pro-se defendant from an unidentified redoubt in the Austrian Tyrol. To put the matter in its proper perspective a short survey of the legal landscape is called for.

The Matrimonial Action.
Plaintiff Sharon M. Culp and defendant John F. Culp, III were married on July 3, 1971. Three children were born of the marriage; a child of plaintiff by a previous marriage was also adopted by defendant. All four children are currently unemancipated.
In the fall of 1987, after a marriage of 16 years duration, plaintiff filed a complaint for divorce. Defendant was then living in New Jersey and was represented by local counsel. The early engagement of the litigants saw the usual salvo of orders for support and applications for enforcement. Defendant was ordered to pay plaintiff unallocated support of $1,000 a week, the costs of the children's education at private schools and "roof" expenses.
From the inception of the law suit defendant frustrated every effort to obtain legitimate discovery of his extensive holdings. Interrogatories were served but went unanswered, orders to produce discovery were entered but were ignored.
Early in 1988, defendant retreated across the Delaware to the apparent safety of another jurisdiction  Pennsylvania. In a *569 letter to plaintiff he wrote: "But I'm in Pa. now and you are on your own in N.J.!! Good luck!"
In the spring of 1988, plaintiff changed counsel. A short-lived truce followed. The parties through counsel signed a consent order on May 11 agreeing to the disposition of proceeds from defendant's sale of a cemetery in Pennsylvania. The consent order also provided that defendant's "support obligations ... shall continue in accordance with prior Court Orders." In the summer, defendant retained the firm of Pitney, Hardin, Kipp & Szuch, but by the winter that firm sought to be relieved of counsel, because defendant's failure to cooperate in the discovery process prevented counsel from effectively representing defendant and also from fulfilling their responsibilities as officers of the court. They were permitted to withdraw.
In December 1988, the court granted plaintiff's motion to bifurcate the matrimonial action to allow an immediate hearing on the cause of action for divorce while reserving on the issues of support and equitable distribution.[2] In light of defendant's age and health, bifurcation was permitted to avoid the problems stemming from defendant's untimely death which would deprive the surviving spouse of equitable distribution under N.J.S.A. 2A:34-23 while excluding her, because of the moribund marriage, from an elective share under N.J.S.A. 3B:8-1.[3]See Carr v. Carr, 229 N.J. Super. 370, 551 A.2d 989 (App.Div. 1988), certif. granted 114 N.J. 520, 555 A.2d 632 (1989). Consequently *570 on Feb. 16, 1989 after taking plaintiff's testimony (defendant did not appear), a judgment of divorce was entered.
When defendant violated a May 2, 1988 order restraining defendant from disposing of, and encumbering, assets by transferring property in Maryland and Pennsylvania to a trust and to his sons from a prior marriage, plaintiff retained Pennsylvania and Maryland counsel. Hostilities now commenced on a new front. But in the spring of 1989, defendant abandoned the battlefield and fled to Europe with over $900,000 in funds from a New York account, leaving behind a son armed with a power of attorney.

The Appointment of a Custodial Receiver and Receiver in aid of Execution.
"Courts do not sit for the idle ceremony of making orders and pronouncing judgments, the enforcement of which may be flouted, obstructed, and violated with impunity...." Berry v. Midtown Service Corp., 104 F.2d 107, 110-111 (2 Cir.1939). Relying on a seldom invoked section of the divorce law  N.J.S.A. 2A:34-23[4], and in response to plaintiff's application, the *571 court appointed Robert J. Chalfin as a custodial receiver to collect the rental income from the tenants of a building owned by defendant in Mechanisburg, Pennsylvania. Although the appointment of a custodial receiver to implement a pendente lite support order may be unusual, it is not without precedent. See Adams v. Adams, 125 N.J. Eq. 166, 4 A.2d 58 (E. & A. 1939).
Shortly after Chalfin's appointment as custodial receiver under N.J.S.A. 2A:34-23, the court, on June 21, 1989, appointed him a statutory receiver in aid of execution under N.J.S.A. 2A:17-66. This was appropriate in view of that fact that on January 26, 1989 a judgment was entered against defendant in favor of plaintiff for support arrears in the amount of $91,256.28 and on August 28, 1989 a second judgment for support arrears was entered in the amount of $93,384.51.
This court's concern about appointing a receiver to collect rents from property in Pennsylvania was alleviated by the fact that the Court of Common Pleas of Berks County, Pennsylvania was registering, adopting and enforcing the orders of this court as "if entered as original orders" in that court. "State lines do not and should not make court barriers." Woodhouse v. Woodhouse, 17 N.J. 409, 417, 111 A.2d 631 (1955). Cf. Higginbotham v. Higginbotham, 92 N.J. Super. 18, 222 A.2d 120 (App.Div. 1966).

The Execution and Levy on the Receiver's Bank Account.
On November 10, 1988, Lexon Properties, Inc. in the Pennsylvania Court of Common Pleas recovered (by confession) a judgment against defendant in excess of one million dollars. Subsequently, Lexon filed suit in New Jersey on this judgment and on October 13, 1989 obtained, in the Superior Court of New Jersey, a default judgment against defendant in the amount of $1,144,410.66. On March 6, 1990 the Law Division of the Superior Court issued a writ of execution commanding the Sheriff of Middlesex County to satisfy the judgment "out of the *572 personal property of the judgment debtor within your County...." The sheriff levied on the receiver's checking account which contained the rental income collected from the office building in Pennsylvania. The receiver now seeks to vacate the writ and levy.
The execution and levy on the receiver's bank account must, of course, be vacated: "Receivers are arms of the court of chancery." The Scranton etc. Co. v. Neonlite Corp. of America, 105 N.J. Eq. 708, 712, 149 A. 369 (Ch. 1930). When a court has appointed a custodial receiver under N.J.S.A. 2A:34-23 to collect rents to be applied toward satisfaction of court-ordered support or alimony, those funds are beyond the reach of a judgment creditor because the funds are in custodia legis.
When a court has acquired jurisdiction over the funds of an insolvent corporation and has appointed receivers to administer them a-coordinate branch of the same court cannot take the funds out of the hands of such receivers and place them in possession of others appointed by it in another proceeding. [The Scranton etc. Co. v. Neonlite Corp. of America, supra at 712, 149 A. 369]
The rationale of the rule is "based upon a necessity, incident to orderly judicial procedure, for any court which has acquired primary jurisdiction over property to continue the exercise of that jurisdiction free from embarrassment or conflicts with other courts arising from other claims against the same property." Fredd v. Darnell, 107 N.J. Eq. 249, 152 A. 236 (Ch. 1930).
Lexon's argument, that the levy is necessary to protect its priority among other possible judgment creditors, is misplaced. The funds in the hands of the receiver are not surplus monies awaiting distribution by the court as was the case in Burg v. Edmonson, 111 N.J. Super. 82, 267 A.2d 545 (Ch.Div. 1970). The receiver is collecting rents, paying the first and second mortgages, administration costs, legal fees and support and maintenance pursuant to prior orders of the court. "[T]he test of immunity of property in custodia legis may in general be said to be whether substantial confusion or embarrassment to the initial jurisdiction would result from the enforcement of *573 process against the property by another tribunal." Id. 107 N.J. Eq. at 253, 152 A. 236. To permit a levy on the receiver's account would not merely cause "substantial confusion or embarrassment," it would create chaos and wreck havoc on this court's efforts to adjudicate the matrimonial dispute.
Lexon, relying on Interchange State Bank v. Riegel, 190 N.J. Super. 139, 462 A.2d 198 (App.Div. 1983) and Freda v. Commercial Trust Co., 118 N.J. 36, 570 A.2d 409 (1990), also argues that since equitable distribution is subject to the valid liens of third parties, its levy is valid. The argument is misplaced. It is now settled that a mortgage granted by a debtor spouse on his interest in property held as a tenant by the entirety continues as a lien on that interest and cannot be extinguished by equitable distribution. Freda v. Commercial Trust Co., supra. But here defendant has no interest in the funds in the receiver's account. They are not surplus funds waiting to be distributed, but funds belonging to the wife and children pursuant to court order. The funds are not sufficient to meet the level of the support order let alone satisfy the two judgments on arrears totaling over $180,000. Defendant has no interest in, or right to, the funds; therefore, the judgment creditor has no right to levy on them.

Conclusion.
The writ of execution and levy by the Sheriff of Middlesex County are therefore vacated.
The application by Lexon to intervene (made at oral argument) is denied. The application is premature. There are no surplus funds to distribute. If and when the sale of the Pennsylvania property generates (after payment of the mortgages) any surplus, Lexon may then intervene at the plenary hearing on equitable distribution. Cf. Daeschler v. Daeschler, *574 214 N.J. Super. 545, 520 A.2d 777 (App.Div. 1986).[5] Problems of priority can be resolved at that time pursuant to R. 1:13-8.
Any other process to enforce the judgment in the matter of Lexon Properties, Inc. v. John F. Culp, III, is hereby stayed until further order of this court. Lexon is further restrained from interfering with the receiver's collection of rents from the Maryland and Pennsylvania properties. This restraint is not intended to limit Lexon in protecting its priority as a judgment creditor in Maryland and Pennsylvania nor to limit its right of discovery of plaintiff and defendant in supplementary proceedings under R. 4:59-1(e) and R. 6:7-2 in aid of the judgment.
NOTES
[1] To date, in this court alone, over 45 orders have been filed.
[2] The Supreme Court Committee on Matrimonial Litigation Interim Report (July 20, 1979) observed that bifurcation should be granted "only in unusual and extenuating circumstances" and with the approval of the assignment judge, which was obtained here. Cf. Judge Krafte's opinion in Leventhal v. Leventhal, 239 N.J. Super. 370, 571 A.2d 348 (Ch.Div. 1989), denying a motion to bifurcate the dissolution of the marriage and the custody dispute from the issues of support and equitable distribution under the circumstances of that case.
[3] See in general: Finnerty "Equitable Distribution, The Elective Share and Death. The Black Hole," New Jersey Family Lawyer, Vol. VI at 177 (May 1987).
[4] The statute in part provides: Pending any matrimonial action brought in this State or elsewhere, or after judgment of divorce or maintenance, whether obtained in this State or elsewhere, the court may make such order as to the alimony or maintenance of the parties, and also as to the care, custody, education and maintenance of the children, or any of them, as the circumstances of the parties and the nature of the case shall render fit, reasonable and just, and require reasonable security for the due observance of such orders. Upon neglect or refusal to give such reasonable security, as shall be required, or upon default in complying with any such order, the court may award and issue process for the immediate sequestration of the personal estate, and the rents and profits of the real estate of the party so charged, and appoint a receiver thereof, and cause such personal estate and the rents and profits of such real estate, or so much thereof as shall be necessary, to be applied toward such alimony and maintenance as to the said court shall from time to time seem reasonable and just; or the performance of the said orders may be enforced by other ways according to the practice of the court. Orders so made may be revised and altered by the court from time to time as circumstances may require.
[5] The Supreme Court, in Freda v. Commercial Trust Co., 118 N.J. 36, 570 A.2d 409 (1990), rejected that part of the Daeschler decision holding that equitable distribution could extinguish a lien on property held in a tenancy by the entirety.