The bill of complaint in this cause was filed April 8th, and an order to show cause was issued thereon returnable April 18th. There appears to have been some activities in Illinois after the filing of the bill of complaint in this cause and the issue of the order to show cause thereon, as a result of which receivers were appointed by an Illinois court for the defendant and some affiliated corporations of the defendant. Upon the return of the order to show cause on Monday last, the hearing thereunder was continued, at the request of counsel for the defendant, until to-day — April 20th. Now this morning counsel for complainant informed me that an order was made yesterday by an Illinois court having for its purpose the restraining of the complainant in this suit from prosecuting his complaint in this court. I don't know at whose instigation such order was made by the Illinois court, but the action savors very much to me like the reprehensible conduct adverted to by the United States supreme court in theWatts and Sachs Case, reported in 190 U.S. 1 — if I remember the citation correctly. In that case, as I recall, counsel applied to a court for a continuance of a hearing of a matter then pending before the court, and in the interim between such application and the continued date of hearing proceedings were instituted in another court which tended to circumvent the jurisdiction of the primary court, and the conduct of such counsel was characterized as unseemly. I do not intend and I wish it to be well understood *Page 565 
that my remarks at this time are not in anywise applicable to Messrs. Pitney, Hardin Skinner, the solicitors for the defendant in this suit. I have in mind that said solicitors were not in anywise a party to the activities in the Illinois court to which I am adverting. When Mr. Pitney made known his request for a continuance until to-day of the hearing which was scheduled to be had before me on Monday last, I inquired as to whether in theinterim any application would be made to the federal courts or a court of any other jurisdiction, and Mr. Pitney stated to me that so far as he was aware there was no other proceeding in contemplation which might affect the instant case. I am assuming therefore that the activities of the lawyers and other parties in interest who are responsible for the presentation of the matter in the Illinois court which resulted in the making of an order yesterday by said court such as has been made known to me to-day by counsel for complainant are not in anywise attributable to the solicitors of the defendant in this suit, Messrs. Pitney, Hardin Skinner, whom we know to be a very reputable firm of lawyers and whom we all know would not undertake or be a party to any such practice I am referring to. It is plain to me that the judge of the Illinois court who made the order to which my attention has just been called has misconceived the authority of this court in the premises. The authority of this court in the premises is to hold the bill of complaint which has been filed in this suit and determine whether the allegations thereof are in fact as represented therein. It is what is denominated in the law aclass bill, clearly distinguishable from the ordinary bill of complaint filed in a suit in which a complainant would have a right to control and suffer a dismissal of it any time up to final decree if there be no intervening equities to prevent such course of procedure; but in a class bill, such as the one filed in this suit and which I have now before me for consideration, the complainant has no control whatever over the bill of complaint after it has been filed and the court has assumed jurisdiction thereunder. Such a bill is filed not only for the benefit of the complainant and those who may *Page 566 
be interested with him as creditors or stockholders of the alleged insolvent corporation, but the public at large also has an interest therein. I have had occasion to advert to the rules of law applicable to matters of this kind in a number of cases which I decided within the past few years, one of them the case of Auburn Button Works, Inc., v. Perryman Electric Co., Inc.,107 N.J. Eq. 554; another, Kelly v. Kelly-Springfield TireCo., 106 N.J. Eq. 545; another, Elevator Supplies Co., Inc., v. Wylde, 106 N.J. Eq. 163; another, Madsen v. Burns Bros.,108 N.J. Eq. 275, another a series of six cases, four of which were ultimately brought to the attention of the chancellor who has since assumed charge thereof, one of which, as I recall, isLiss v. Security Finance Corp. (Docket 76, page 677), and another, Naspo v. Summit Sweets Shoppe, Inc., 106 N.J. Eq. 49.
In the Liss Case the chancellor restated the rule of law applicable to class bills and the right of a complainant to discontinue suit thereunder. Under our law, when a bill of complaint is filed such as I now have before me for consideration, if a receiver is appointed thereunder, such receiver becomes vested with title to the property of the corporation and assumes control thereof from the date of the filing of the bill. No matter how much time has intervened between the filing of the bill and action thereon resulting in the appointment of a receiver, the authority of the receiver in the premises dates back to the date of the filing of the bill of complaint. Section 68 of our Corporation act expressly provides that when a receiver of an insolvent corporation is appointed he becomes vested with title to the property of the insolvent corporation wheresoever the property of the corporation be situate. The statute does not limit the title of the receiver to property within the State of New Jersey. A receiver's authority extends to property wheresoever situate within or without the state. The words of the statute are "wheresoever situated." So, whether the property of the defendant in this suit which is now before me for consideration, namely, the United Public Service Company, be in New Jersey, Illinois, Honolulu, or elsewhere, the title to all property of the defendant corporation vests *Page 567 
automatically or ipso facto in the receiver upon his appointment by the court. If there be property in other states which the receiver is vested with title to but which he has not the physical possession of, it is the customary practice for the receiver to apply to the courts of the state where the property is located for what is ordinarily denominated ancillary receivership. The order that has been read to me by counsel for complainant apparently operates against Mr. Umland, the complainant in this suit. Mr. Umland does not control this suit. I am not concerned as to what may happen as between Mr. Umland and the Illinois court. They can deal among themselves in that respect. The order of the Illinois court does not in anywise transgress the rights of this court or operate against the jurisdiction of this court in the permises. As I stated, Mr. Umland, the complainant herein, does not control the suit which is now before me for consideration. He has had no control whatever thereof after the filing of the bill of complaint. He has no interest in this suit other than his interest as a general creditor. The matter is now solely in charge of this court, and the bill of complaint should not be dismissed by this court unless it appears to the satisfaction of the court upon due inquiry, which under our law is made summarily, that the defendant corporation is not, as alleged to be, insolvent, or that its business is not being conducted in a manner subversive to the provisions of section 65 of our Corporation act. It may be, as stated by Mr. Pitney, that the physical assets of the defendant corporation may be situate elsewhere than in New Jersey. That statement may apply to the corporation's property generally, but it has been stated by Mr. Harris, the solicitor for the complainant, that there is at least five million dollars which a receiver appointed by this court may readily obtain control of or reduce to his possession. It has been represented by Mr. Harris, and the bill of complaint alleges, that five million dollars has been loaned or advanced by the defendant to one of its underlying or associate companies, and if such be the fact a receiver appointed by this court would have a right, and it would be his duty, to seek a recovery of that sum of *Page 568 
money for the defendant corporation. I am actuated in making these remarks because the case before me is one which primafacie appears to be an ordinary case, an alleged insolvent corporation, but it has been brought to the attention of the court since the bill of complaint has been filed that the case is more than of ordinary import; that it is a very important case, and involves billions, instead of millions of dollars, inasmuch as the defendant, the United Public Service Company, is alleged to be a holding company for five or six gigantic business enterprises organized and operating in different parts of the country. A diagram or sketch was submitted to me by counsel for the complainant at the time the bill of complaint was filed with me, which manifests that the defendant, the United Public Service Company, holds, owns or controls the capital stock of several of the very large business enterprises that I have just referred to, other than a few shares set apart and used and employed for the qualification of directors of the corporations, and as to at least one of the underlying companies to which I have referred the defendant owns at least a majority of the stock of the corporation. I cannot very well disregard the information that comes to me through a general public source, that is, through the public press, that since this instant suit was instituted in this court there has been great activity upon the part of some of the associate or underlying companies to which I have referred, to get under cover, if I may use that expression, to place the control of such companies in friendly hands, and that for such purpose resort has been had to the courts of Illinois, and that such companies have caused an appearance to be entered in the Illinois court, and have made known to such court that they cannot deny the allegations contained in the complaint filed in said cause as to the financial condition of such companies, and that such companies have formally joined in the request of the plaintiffs in such suits for the appointment of a receiver, and that friendly receivers have apparently been appointed therefor, if I may judge from the names of those whom I have read in the public press were appointed receivers, one of them being Mr. Insull, who is the *Page 569 
chief factor in all of the companies, and who is chiefly responsible for the organization of such companies which are underlying or affiliate companies of the United Public Service Company, the defendant herein. It has been stated that the United Public Service Company, the defendant herein, in some manner controls the New Jersey Central Light, Heat and Power Company, a concern doing business in Monmouth county or thereabout, and it has been said there is some dickering between said company and the defendant herein, and the Public Service Corporation of New Jersey, with contemplation toward the acquisition by the latter named company of the Central company. It has also been represented through the presentation by counsel for the complainant and also general news items in the public press that there is some working agreement between the defendant and its affiliates, referred to at times as the Insull interests, and the Public Service Corporation of New Jersey, and that the allied interests of the defendant, being in the nature of an octopus, will not enter New Jersey and compete with the Public Service Corporation of New Jersey. This matter is of such grave concern that this court ought not and will not dismiss the bill of complaint in this cause without sufficient warrant therefor. There is no reason manifested to the court at this time why the bill of complaint should be dismissed. There has been no denial of any of the allegations contained in the bill of complaint. The defendant has had since April 8th to prepare a denial of the allegations of the bill, if such could be truthfully denied. It is a well known rule of equity pleading that allegations, well pleaded, contained in a bill of complaint, must be taken by the court as confessed if they be not denied or explained by the defendant. In the instant case the defendant has not seen fit to present any denial to this court of the complainant's allegations as contained in the bill of complaint. The defendant seemingly suffers the allegations of the bill to go against it by default in pleading. It seems to me that this court must consider as admitted all of the essential allegations of the bill of complaint. Mr. Harris, the solicitor for the complainant, has just made known to me *Page 570 
that he received a telegraph dispatch from some source containing information which would indicate that some action has been taken by a court in another jurisdiction against the defendant corporation. This court cannot give credence to or be guided by matter contained in telegraph dispatches to counsel, nor can this court take cognizance of any such dispatches by way of evidence or proof. Mr. Pitney has submitted to the court an affidavit in behalf of the defendant, which affidavit I am now marking filed so that parties in interest can have the benefit thereof, if any benefit may be obtained in behalf of the defendant thereunder. The affidavit appears to have been made by one Ralph D. Stevenson, who says therein he is an attorney and agent for the United Public Service Company. What sort of an agency Mr. Stevenson may be said to be clothed with is not disclosed by the affidavit. I will file the affidavit without further comment. It will be kept in the files of the court for future reference by parties in interest so far as they may consider it to be of interest. I have had occasion heretofore to-day to deal with two very small corporations which were alleged to be insolvent and for which application was made for the appointment of receivers. Those in the court room who were within my hearing when such matters were presented to me for my consideration could readily observe the careful manner in which I was dealing with such corporations before undertaking to determine what judicial action should be taken with respect thereto, that is, with respect to adjudging them insolvent and considering the appointment of a receiver for them. I have in mind that in these present times of business depression and financial stringency and stress that almost all business concerns, be they corporate or individuals, are sorely affected. It has been my purpose in the past, it is my purpose now, and will be my purpose in the future, not to appoint receivers for any corporation alleged to be insolvent, even though such be adjudged insolvent, unless the necessity therefor appears to me to be such as will best subserve the interests of the creditors, stockholders, and the public at large. The public at large is no mean factor in matters of a kind such as the *Page 571 
gigantic business concern which I have now before me for consideration, because the public bears the freight so to speak, and as stockholders carry the greater burden, and are the ones that will suffer most by any action taken by the court with respect to such concern. The big fellows, if I may so refer to the organizers of business enterprises such as I am now considering, have not so much to fear as the little fellows, if I may use such expression for the general run of stockholders, as to the final outcome of the actions of the court in the premises. The humble stockholders throughout the United States and elsewhere who carry and hold the stock, and particularly the common stock, of corporations such as I have now in mind, are the ones who cannot readily protect themselves when insolvency is declared and the assets of the corporation sold in a receivership proceeding. The so-called big fellows, when reorganization takes place, can usually protect themselves. I have in mind that it has come to my attention in some way in the instant proceeding that Mr. Insull came to New York to obtain a loan of $250,000,000 from the General Electric Company with which to refinance one or more of the corporations allied with the United Public Service Company, the defendant herein. It is clearly manifest an ordinary humble stockholder cannot accomplish such an undertaking. This court is no respecter of persons, or of corporations, whosoever they may be. This court's activities are for the benefit of all — the big and the little, the august and the lowly, the rich and the poor, alike. I will consider the matter now presented to me for my consideration and will dispose of the matter sometime after recess, perhaps after two o'clock. I will read again the bill of complaint and affidavits in connection therewith. I will read again the Stevenson affidavit which I have just marked filed in behalf of the defendant. I will reflect upon and consider the arguments presented to me by the solicitors for the complainant and defendant. I have in mind, as I always have in mind in matters of this kind, that which was suggested by Mr. Pitney in his argument, that is, the necessity for the appointment of a receiver in this jurisdiction. I have in *Page 572 
mind that it is not in every case where this court adjudges a corporation to be insolvent that the court will appoint a receiver or receivers for such corporation. The court will appoint receivers only in instances where the necessity therefor manifests itself to the court. As I have indicated this defendant corporation has had since April 8th to prepare whatever proofs it might have deemed proper to present to the court in its behalf tending to controvert the allegations of the bill of complaint. Yet it has not seen fit to present any such proofs to the court. Instead, as I have indicated, it has seen fit to engage itself in activities in an Illinois court for the ostensible purpose of having such court take hold, by means of receivership proceedings, of the defendant corporation and of several affiliate or underlying corporations of the defendant, which are controlled or under the domination of the defendant. The apparent purpose of the activities in the Illinois court, which seemingly have resulted in the appointment of receivers for not only the defendant herein but also affiliate or underlying corporations of the defendant, or such as the defendant controls by stock ownership, has been an attempt to divest the defendant, and thwart this court of control of the assets and property of the defendant in the event that this court should adjudge the defendant insolvent, or that it was so violating provisions of section 65 of our Corporation act as would warrant this court to appoint receivers for the corporation. I do not hesitate to say in passing that those who put into operation the activities which appear to have been carried on in the Illinois court have misconceived the authority of this court in the premises, and have over-reached themselves in their endeavors. The activities to which I have referred, and the appointment of receivers thereunder by the Illinois court, will not in anywise deprive this court of its jurisdiction in the premises, and will not effect a denial of the right of this court to deal with the defendant corporation in such manner as this court may deem advisable in the premises. In view of the fact that the bill of complaint herein was filed April 8th, that an order to show cause was issued thereon returnable April 18th, and *Page 573 
that on the latter date a continuance of the hearing under the order to show cause was granted upon application of the solicitors for the defendant to April 20th, and that in theinterim several underlying or affiliate corporations of the defendant herein, and the defendant itself, through activities in the Illinois courts, sought to circumvent the result which would necessarily follow from the exercise by this court of its jurisdiction and authority in the premises, I feel that I must necessarily regard the action and conduct of those who participated in or who were in anywise responsible for the activities before the Illinois courts as not only censurable but reprehensible. It appears to me to have been the deliberate intention of such parties to bring about an unseemly conflict between the Illinois courts and the court of chancery of New Jersey. There has been entirely too much of such practice in the recent past to augur well for the public good, and the sooner the courts and the members of the bar put an end to such conduct the better it will be for litigants and the public generally. I recently had occasion to refer to such practices in opinions filed by me in the cases of Perfection Garment Co. v. CrosbyStores, Inc., 109 N.J. Eq. 450, and Moore Co. v. FederalMetal Bed Co., 110 N.J. Eq. 217. In both of said cases I commented upon the necessity for the observance of respect for orderly judicial procedure. Sooner or later, and perhaps within a short time, some of those smart individuals who resort to such practices will feel the heavy arm of the law upon them in contempt proceedings or the like, and such may tend to serve as a deterrent or put an end to such practices. In the Watts Case to which I have referred my recollection is the attorney who was adjudged in contempt by a state court, was exonerated therefrom by the United States supreme court on a bare technicality. Perhaps such a technicality may not avail those who may be brought to account for contempt proceedings in this court, or other courts, for such practices as I have alluded to which seem to have been indulged in to a considerable extent of late. I regret very much that the bar generally seems to be declining to such an extent that it has members within its midst who *Page 574 
resort to such practices as I have adverted to, which bring courts of various jurisdictions into what prima facie appears to be unseemly conflict. It does not augur well for the public weal. Some of the lawyers of to-day, I regret to say, appear to consider the practice of the law to be a business rather than a profession. An instance thereof was brought to my attention about a year or so ago. It appeared that several lawyers were inquiring of a member of a firm of lawyers which was accustomed to utilize the public press as a means of exploiting their court cases, as to whether such lawyers were not fearful of action against them by the bar association through charges of violation of professional ethics, and the member of the firm of offending lawyers to whom the inquiry was directed, remarked that the law was no longer a profession, but a business. Such it seems to me the practice of the law is considered by quite a number of present-day lawyers. The sooner such lawyers get such an idea out of their minds the better it will be for the courts, for the members of the bar and for the public generally, because the law to-day is undoubtedly just as honorable a profession as it ever was, and will continue so to be, if the members of the bar will but observe, advocate and practice the principles of their profession and endeavor to retrieve the profession from some of the dishonorable practices that seemingly have been resorted to in recent years. In olden days the practice of the law was held in such high esteem, and was so idealistic in the minds of practicing lawyers, that lawyers were satisfied at times with what was termed an honorarium, but such is seldom considered in present-day activities.
 ADDENDUM.
After due consideration of the above stated matters the court adjudged the defendant, United Public Service Company, insolvent within the purview and meaning of the General Corporation act (P.L. 1896 p. 277), and the several acts amendatory thereof and supplemental thereto, and adjudged also that the business of the defendant has been and *Page 575 
is being conducted at a great loss and greatly prejudicial to the interest of its creditors and stockholders so that its business cannot be conducted with safety to the public and advantage to the stockholders, and adjudged also that an injunction forthwith issue against the defendant corporation restraining it and its officers and agents from exercising any of its privileges or franchises, and from holding any corporate meetings, and from collecting or receiving any debts or paying out, selling, assigning or transferring any of its estate, moneys, funds, lands, tenements or effects, except to the receivers appointed by this court; and the court appointed Hurst F. Broom, of the city of Montclair, New Jersey, and John Milton, of the city of Jersey City, New Jersey, receivers of the defendant corporation, with all the powers conferred upon them and imposed by law incident thereto. An order or decree to such effect was made and filed April 20th, 1932.