209 N.J. Super. 25 (1986)
506 A.2d 1238
NAOMI WILZIG, ET AL., PLAINTIFFS,
v.
SELIG J. SISSELMAN, INDIVIDUALLY, AND AS EXECUTOR OF THE ESTATE OF H. JEROME SISSELMAN, DECEASED, ET AL., DEFENDANTS.
SELIG J. SISSELMAN, ET AL., PLAINTIFFS,
v.
ALEXANDER M. GOLDFINGER, JR., ET AL., DEFENDANTS.
NAOMI WILZIG, SIGGI B. WILZIG AND SONIA DONNENBERG, PLAINTIFFS-RESPONDENTS,
v.
SELIG J. SISSELMAN AND J.D. CONSTRUCTION COMPANY, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 3, 1985.
Decided March 3, 1986.
*27 Before Judges MICHELS, GAULKIN and STERN.
Allan H. Klinger argued the cause for appellant J.D. Construction Company (Klinger, Nicolette, Mavroudis & Honig, attorneys; Allan H. Klinger, of counsel; Eric R. Perkins, on the brief).
Thomas H. Bruinooge argued the cause for appellant Selig J. Sisselman (Bruinooge & Andrews, attorneys; Thomas H. Bruinooge, of counsel and on the letter brief).
Murry D. Brochin argued the cause for respondents Naomi Wilzig and Sonia Donnenberg (Lowenstein, Sandler, Brochin, Kohl, Fisher, Boylan & Meanor, attorneys; Murry D. Brochin, of counsel; Marion Percell, on the brief).
John B. Newman argued the cause for respondents Harriet Cohen, Sheldon S. Cohen, Isadora Abigail Trenk, Renee B. Trenk, Rachael Araten and Harry Araten (Hirsch, Newman, Simpson & Baer, attorneys; John B. Newman, of counsel and Vickie Martin Hamilton, on the brief).
*28 Eugene M. Haring argued the cause for respondent James E. Wheat, Liquidator-Receiver of Sisselman Israel Associates (McCarter & English, attorneys; Eugene M. Haring, of counsel; Anne W. Crawford, on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Defendants J.D. Construction Company and Selig J. Sisselman appeal from a judgment of the Chancery Division that declared null and void a contract, dated August 25, 1983, pursuant to which Sisselman Israel Associates was to sell to J.D. Construction Company, for $12,600,000, approximately 180 acres of land situated in the Borough of East Rutherford, New Jersey which was under the jurisdiction of and administered by the Hackensack Meadowlands Development Commission.
This appeal arises against a complex background of protracted litigation involving members of the family of the late H. Jerome Sisselman. The initial complaint captioned Naomi Wilzig, et al. v. Selig J. Sisselman, individually and as Executor of the Estate of H. Jerome Sisselman, deceased, et al. (C-1444-80) was filed in the Superior Court of New Jersey on December 29, 1980. This multi-count complaint, filed by various Sisselman family members, involved numerous legal disputes relating to the Estate of H. Jerome Sisselman. In part, the complaint dealt with a tract of land, known as the "Railroad Property", which consisted of approximately 180 acres located in the Borough of East Rutherford, New Jersey. This property constituted a significant portion of the site of the proposed Berry's Creek Center located in the Hackensack Meadowlands. Prior to his death, H. Jerome Sisselman had transferred title to this land to Sisselman Israel Associates, a family partnership. This tract constituted the partnership's main asset. See Wilzig v. Sisselman, 182 N.J. Super. 519, 523 (App.Div. 1982).
On August 25, 1983, defendants Selig J. Sisselman and his cousin, Martin L. Sisselman, as managing partners of Sisselman *29 Israel Associates, entered into a contract to sell the 180 acre parcel of land to J.D. Construction Company. Thereafter, other partnership members sought and obtained an order to show cause, with temporary restraints, enjoining Selig J. Sisselman and J.D. Construction Company from implementing or taking any action relative to the August 25, 1983 agreement. Specifically, Selig J. Sisselman was to show cause why an order should not be issued: (1) permanently enjoining him from implementing the August 25, 1983 agreement; (2) enforcing an agreement for the preparation and implementation of plans for the development of the Berry's Creek Center, dated May 23, 1983; (3) enforcing a settlement agreement entered into by members of the Sisselman family, dated April 16, 1983; and (4) declaring the latter two agreements valid and binding on all the parties. This action, which was captioned Selig J. Sisselman, et al. v. Alexander M. Goldfinger, Jr., et al. (C-2057-80), was consolidated with the aforementioned action in the Superior Court.
Thereafter, plaintiffs Naomi Wilzig, Siggi B. Wilzig and Sonia Donnenberg instituted another action against defendants Selig J. Sisselman and J.D. Construction Company. In this action, captioned Naomi Wilzig, et al. v. Selig J. Sisselman (C-3837-83E), plaintiffs sought, in part, a rescission of the agreement of August 25, 1983 between J.D. Construction Company and Sisselman Israel Associates or, alternatively, a declaration that the agreement was null and void and a permanent injunction against defendants J.D. Construction Company and Selig J. Sisselman preventing implementation of the agreement. J.D. Construction Company, in addition to filing an answer to the complaint and a crossclaim, filed a third-party complaint against Martin L. Sisselman and Sisselman Israel Associates. In this complaint, J.D. Construction Company sought specific performance of the August 25, 1983 agreement, on the ground that it had entered into the agreement relying upon certain representations made by Selig J. Sisselman and Martin L. Sisselman. On motion, the trial court determined that specific performance was not a remedy available to J.D. Construction *30 Company with respect to its agreement of August 25, 1983 with Sisselman Israel Associates.[1]
Thereafter, following a lengthy bench trial, the trial court declared that the agreement of August 25, 1983 was null and void because: (1) Selig J. Sisselman and Martin L. Sisselman did not have actual or apparent authority to enter into an agreement on behalf of Sisselman Israel Associates; (2) the Sisselman Israel Associates' property, which was the subject of the August 25, 1983 agreement, was in custodia legis and, therefore, could not be sold without prior court approval; and (3) the August 25, 1983 agreement was executory in nature and had been disavowed by the court-appointed receiver. The trial court thereupon entered judgment in favor of plaintiffs Naomi Wilzig, Siggi B. Wilzig and Sonia Donnenberg and third-party defendant, Sisselman Israel Associates (then in receivership) and against defendants J.D. Construction Company and Selig J. Sisselman. This appeal followed.
We are satisfied from our study of the record and the arguments presented that the judgment of the trial court was based on findings of fact that were adequately supported by the evidence and that all of the issues of law raised are clearly without merit. R. 2:11-3(e)(1)(A) and (E). Contrary to defendants' claim, there is substantial credible evidence in the record, as a whole, reasonably to warrant the trial court's conclusions that: (1) the Sisselman Israel Associates property here involved was in custodia legis when the agreement with J.D. Construction Company was executed on August 25, 1983; (2) Selig J. Sisselman and Martin L. Sisselman did not have actual or apparent authority to execute the agreement for the sale of the *31 property on behalf of Sisselman Israel Associates; and (3) James E. Wheat, Liquidator-Receiver of Sisselman Israel Associates, had the authority and power to disavow the August 25, 1983 agreement and he, in fact, did disavow this agreement. See Leimgruber v. Claridge Associates Ltd., 73 N.J. 450, 455-456 (1977) (findings of trial judge are considered binding on appeal when supported by adequate, substantial and credible evidence); Rova Farms Resort v. Investors Insurance Co., 65 N.J. 474, 483-484 (1974); State v. Johnson, 42 N.J. 146, 161-162 (1964). Accordingly, the judgment under review is affirmed substantially for the reasons expressed by Judge Lester in his oral opinion of October 4, 1984.
We believe, however, that some further comment is appropriate with respect to defendant J.D. Construction Company's contentions that: (1) Sisselman Israel Associates' property was not in custodia legis when the agreement of August 25, 1983 was negotiated and executed; and (2) defendants Selig J. Sisselman and Martin L. Sisselman lacked authority to enter into the August 25, 1983 agreement on behalf of Sisselman Israel Associates.

I.
Property is considered to be in custodia legis when it is "in the custody of the law." Thus, under our law, when a complaint is filed for the dissolution of an entity and a receiver is appointed thereunder, "such receiver becomes vested with title to the property ... from the date of the filing of the bill." Umland v. United Public Service Co., 111 N.J. Eq. 563, 566 (Ch. 1932), aff'd, 111 N.J. Eq. 613 (E. & A. 1932). The property of the entity is thereafter in custodia legis and the receiver's possession is considered to be that of the appointing court. In re Coger, 340 F. Supp. 612, 616 (W.D.Va. 1972). Implicit in any order establishing a custodia legis status, through the appointment of a receiver, is the fact that the property becomes inalienable without the knowledge and consent of the court. *32 Accordingly, the mere appointment of a receiver operates to place property in custodia legis and automatically prohibits its sale in the absence of approval of the court. First Southern Properties, Inc. v. Vallone, 533 S.W.2d 339, 341 (Tex.Sup.Ct. 1976). Authorization by the court is even required where a prior deed of trust or execution exists. Ibid.
Furthermore, where property is found to be in custodia legis, a buyer's actual or constructive notice of the receiver's appointment may not be relevant. In First Southern Properties, supra, a receiver brought suit in the court of his appointment to set aside a deed which had been executed after a foreclosure sale. He alleged that the deed was void because the property in question was in custodia legis at the time of sale and no authorization had been obtained from the court. Although First Southern Properties had neither actual nor constructive notice of the receiver's appointment, the Texas Supreme Court "decline[d] to change or depart from the long established rule of property law which has been continuously applied to lands in custodia legis without reliance upon actual or constructive notice." 533 S.W.2d at 342.
Although case law links the custodial status of the property with the function of the receiver, the two are not inextricably related since property may remain in custodia legis even when an appointed receiver has terminated his activities. Federal Savings & Loan Insurance Corp. v. PSL Realty Co., 630 F.2d 515, 521 (7th Cir.1980), cert. den. sub nom. Granite Investment Co. v. Federal Savings & Loan Insurance Corp., 452 U.S. 961, 101 S.Ct. 3109, 69 L.Ed.2d 971 (1981). In Federal Savings, the Seventh Circuit recognized that:
The receiver is an officer of the court and subject to its orders in relation to the property for which he is responsible until discharged by the court. Moreover, unless the receiver has made a disposition of the property by order of the court to the original owner or to another party, upon the receiver's discharge the property remains in the custody of the court. [630 F.2d at 521].
In view of the foregoing, we find that J.D. Construction Company's position, that the Sisselman Israel Associates property *33 was in a non-custodial status when the August 25, 1983 agreement was negotiated and executed, is simply untenable. The record shows that on June 11, 1982 the trial court appointed Arthur Young & Company as a "`Special Fiduciary-Expert' to aid the Court in the [then] pending `Sisselman Cases'." This appointment was made in the light of the trial court's recognition that it had "the jurisdiction and the duty to preserve the assets [of the Sisselman entities] and to provide for the[ir] management and control where required." Arthur Young & Company's initial authority was limited to the investigation and acquisition of appraisals with respect to the value of the Sisselman properties, including that of Sisselman Israel Associates, so that a future course of action could be planned.
The order appointing Arthur Young & Company clearly indicated that any suggested disposition of the Sisselman entities (i.e., liquidation, dissolution, execution of a contract for development) would "require further approval of the Court" and that the appointment of Arthur Young & Company "[was] not that of a `receiver' in any traditional sense." Subsequently, by order dated October 21, 1982, the trial court appointed Arthur Young & Company as the Court's fiduciary-receiver with respect to the various Sisselman entities, including Sisselman Israel Associates. The trial court specifically empowered Arthur Young & Company to:
Negotiate with developers, regulatory authorities, lending institutions and others as may be deemed necessary for the development of the Berry's Creek Center, in consultation with the current managers of the entities involved; and, only upon the approval of the Court, enter into development contracts and/or contracts for the sale, lease or other disposition of the lands involved in the Berry's Creek Center development.
Arthur Young & Company performed services for the trial court until February 15, 1983, when its representative, James E. Wheat, made application to the trial court for approval of the sale of Sisselman Israel Associates' and Bergen County Associates' property in the Hackensack Meadowlands to Rose Associates, a developer. After hearing James E. Wheat's recommendations, the trial court reserved decision as to whether sale of *34 the property in the manner suggested would be in the best interest of all concerned. It also altered the responsibilities of Arthur Young & Company on February 15, 1983 stating:
I am going to limit severely any action by my appointee from this day on.
* * * * * * * *
I keep my appointment intact with respect to Arthur Young & Company solely for the purpose of creating a vehicle for the consolidation of all of the positions of the parties. He is to take no affirmative action further in negotiating; he is to advise Rose and the Meadowlands Commission of my decision.
Although, pursuant to the court's direction, after February 15, 1983, James E. Wheat was not to take any further action with respect to negotiating the sale of the subject property, there cannot be the slightest doubt that he remained as court-appointed fiduciary-receiver with respect to Sisselman Israel Associates and the its 180 acre tract, and that nothing was to be done with respect to that property without prior court approval. Consequently, the custodia legis status, once established in June of 1982, remained in effect despite the trial court's limitation on the activities of James E. Wheat.
The argument that, by the trial court's own admission, James E. Wheat was not a "true receiver" is similarly unpersuasive. The exact title and responsibilities which the court imposed on the fiduciary-receiver are really not determinative. In our view the record amply demonstrates that the trial court plainly intended to place the Sisselman properties under its control and that all of the parties involved in this complex and protracted litigation knew, or should have known, that such was the effect of the orders which were entered.
Accordingly, we agree with the trial court that the Sisselman Israel Associates' property was in custodia legis at the time of the negotiation and execution of the August 25, 1983 agreement. Pursuant to this status, neither Selig J. Sisselman nor Martin L. Sisselman, as manager of Sisselman Israel Associates, could sell or otherwise dispose of the property without the prior approval of the trial court. Since the record lacks any credible evidence that they sought judicial approval, either *35 before or after the execution of the agreement, the trial court properly declared the agreement null and void and denied J.D. Construction Company's attempt to enforce it.

II.
We are also satisfied that, contrary to the claim of J.D. Construction Company, the trial court correctly concluded that neither Selig J. Sisselman nor Martin L. Sisselman had apparent authority to enter into the agreement of August 25, 1983, on behalf of Sisselman Israel Associates. The general rule with respect to apparent authority in this State is clearly stated in Mesce v. Automobile Association of New Jersey, 8 N.J. Super. 130 (App.Div. 1950), as follows:
Fundamentally, the liability of the alleged principal must flow from the act of the principal. It is, of course, the general rule that the principal is bound by the acts of the agent within the apparent authority which he knowingly permits the agent to assume or which he holds the agent out to the public as possessing. The factual question is whether the principal has by his voluntary act placed the agent in such a situation that a person of ordinary prudence, conversant with business uses, and the nature of the particular business, is justified in presuming that such agent has the authority to perform the particular act in question. (Citations omitted). When established, the authority, implied or apparent, can neither be qualified by the secret instructions of the principal nor enlarged by the unauthorized misrepresentations of the agent. (Citation omitted). [Id. at 135].
* * * * * * * *
Moreover, apparent authority by which a principal is bound is only that which "a person of ordinary prudence" is justified in presuming from the conduct of the principal. Such authority is not be expanded by the carelessness and indifference of the third party nor erected upon the misrepresentations of the agent. [Id. at 136].
Apparent authority imposes liability, not as a result of an actual contractual relationship, but because of actions by a principal which have misled a third party into believing that a relationship of authority does, in fact, exist. Shadel v. Shell Oil Co., 195 N.J. Super. 311, 314 (Law Div. 1984). In this respect the doctrine is closely related to that of estoppel. See N. Rothenberg & Son, Inc. v. Nako, 49 N.J. Super. 372, 381 (App.Div. 1958) (distinguishing between estoppel theory and objective *36 contract theory of apparent authority). Where one party, by words or conduct, "causes another to believe in the existence of a certain state of affairs, inducing the other to act on such belief, the former party will be estopped to assert a different state of affairs." Shadel v. Shell Oil Co., supra, 195 N.J. Super. at 315. In addition, the essential element of reliance must be present before apparent authority can be found. N. Rothenberg & Sons, Inc. v. Nako, supra, 49 N.J. Super. at 381.
Applying the foregoing principles here, we are satisfied the trial court correctly concluded that J.D. Construction Company could not rely on the doctrine of apparent authority to support the validity or enforceability of the August 25, 1983 agreement with Sisselman Israel Associates. First, there was no voluntary act on the part of Sisselman Israel Associates which reasonably could have led J.D. Construction Company to believe that Selig J. Sisselman and Martin L. Sisselman were vested with the authority to negotiate and execute an agreement for the sale of the 180 acre tract of land on the partnership's behalf. To the contrary, the partnership, through its other members, expressly advised J.D. Construction Company, by letter of August 23, 1983, that Selig J. Sisselman did not have authority to act on behalf of the group. The fact that, after receipt of this letter, Selig J. Sisselman and Martin L. Sisselman indicated that their authority had not been rescinded, does not aid J.D. Construction Company's position, since apparent authority cannot be based upon the representations of an agent. Mesce v. Automobile Association of New Jersey, supra, 8 N.J. Super. at 136.
Additionally, the agreement itself raises a substantial question as to J.D. Construction Company's reliance on the sufficiency of the managers' authority and the reasonableness thereof. The August 25, 1983 agreement specifically provided for monetary relief for J.D. Construction Company in the event that the transaction was not consummated by reason of a court *37 determination that Selig J. Sisselman and Martin L. Sisselman lacked the authority to enter the contract on the partnership's behalf. This provision was negotiated into the contract after J.D. Construction Company's receipt of the letter advising of Selig J. Sisselman's lack of authority. As recognized by the trial court, this provision made clear that J.D. Construction Company "was not relying on the appearance of authority." Under these circumstances, we find it inconceivable that J.D. Construction Company, or any other potential purchaser, could reasonably have believed or relied upon the fact that Selig J. Sisselman had the authority to negotiate and sell the 180 acre tract of land owned by Sisselman Israel Associates, without prior court approval.
Affirmed.
NOTES
[1] Defendant J.D. Construction Company sought to challenge the order of the Chancery Division barring the remedy of specific performance on this appeal. J.D. Construction Company did not include this order in its notice of appeal and, therefore, it requested in its appellate brief leave to amend the notice of appeal. In view of our decision, however, we need not consider or decide J.D. Construction Company's application to amend its notice of appeal or its challenge to the trial court's order.