NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2013-12T1

NEW JERSEY REALTY CONCEPTS,
LLC, THOMAS DINARDO, JOSEPH F.
BELASCO, JR.,

     Plaintiffs,

v.

JOHN MAVROUDIS, MICHAEL MAVROUDIS,
INDUSTRIAL CONDOMINIUM ASSOCIATES,
LLC, RIO VISTA PROPERTIES LLC, LAW
FIRM OF MAVROUDIS & RIZZO, RIO
VISTA CONSTRUCTION COMPANY LLC,
RIO VISTA MANAGEMENT LLC, RIO
VISTA NORTHVALE, LLC, RIO VISTA
PROPERTIES 690 LLC, RIO VISTA
MEDICAL LLC, RIO VISTA REALTY LLC,
RIO VISTA RENTALS LLC, RIO VISTA
SNOW LLC, JM MAVROUDIS MANAGEMENT
CO., ANNE MAVROUDIS, NEW JERSEY
HEALTH CARE CENTER LLC, 680 MEDICAL
GROUP LLC, ASC PARTICIPANTS LLC,
IMAGING CENTER OF ORADELL LLC,
PRESCRIPTION DISPENSARY OF ORADELL
LLC, LAB TECHNOLOGIES OF ORADELL
LLC, AND URGENT CARE CENTER OF
ORADELL LLC,

     Defendants.

---

       

| APPROVED FOR PUBLICATION |
| :---: |
| March 19, 2014 |
| APPELLATE DIVISION |

Argued November 12, 2013 – Decided March 19, 2014

Before Judges Yannotti, Ashrafi and Leone.

On appeal from the Superior Court of New
Jersey, Chancery Division, Bergen County,
Docket No. C-230-11.

Darryl T. Garvin argued the cause for appellant William Earnshaw D/B/A Accent on Design.

Stephen P. Sinisi argued the cause for respondent Special Fiscal Agent (Law Offices of Stephen P. Sinisi, Esq., LLC, attorneys; Mr. Sinisi and Robert L. Falkenstern, on the brief).

The opinion of the court was delivered by

LEONE, J.S.C., t/a

Appellant William Earnshaw appeals the orders of the Chancery Division quashing and vacating his writ of execution and notice of levy to execute a judgment issued by the Law Division. We reverse and remand.

## I.

Earnshaw does business as Accent on Design. Pursuant to a contract with Rio Vista Properties, LLC (Rio), Earnshaw designed and installed custom cabinets and countertops for most of the offices in a medical office building (the Property) in Oradell. Rio failed to pay invoices from Earnshaw. Believing Rio to be the sole owner of the Property, Earnshaw filed suit against Rio and John Mavroudis, a managing agent for the Property. In November 2011, the Law Division granted Earnshaw partial summary judgment for contract damages. On February 17, 2012, the Law Division entered a final judgment against Rio in the amount of $100,918.

In fact, the Property was owned 60% by Rio and 40% by New Jersey Realty Concepts, LLC (NJRC), as tenants in common. Rio and NJRC leased the building to medical tenants whose rents were collected by Mavroudis.

Alleging misappropriation of funds, NJRC and others sued Rio, John Mavroudis, his partner Michael Mavroudis, and others in the Chancery Division. On January 9, 2012, the Chancery Division judge removed John and Michael Mavroudis (Mavroudis Defendants) as managing agents for the Property. The judge appointed respondent Steven Sinisi as the Special Fiscal Agent (SFA), giving him managerial authority over the Property.

Earnshaw, now aware of the Property's ownership and management situation, forwarded the February 17, 2012 judgment to the SFA. After the parties negotiated unsuccessfully, Earnshaw recorded the judgment as a lien. The Law Division issued a writ of execution for $100,918. To obtain the 60% of the rents believed due to Rio, the Sheriff issued a notice of levy and executed the writ on the tenants. The Sheriff apparently collected the judgment amount, which is being held in escrow.

On June 5, 2012, the SFA filed a motion in the Chancery action. After hearing argument from the SFA and Earnshaw, the Chancery judge issued an order on June 28, 2012, quashing and

vacating the Law Division's writ and the Sheriff's notice of levy, and requiring the Sheriff to transfer to the SFA the rents collected from the Property. Earnshaw sought reconsideration, which the judge denied on August 29, 2012. On November 30, 2012, the judge denied a stay, and certified as final the June 28 and August 29 orders. Earnshaw appealed those orders on January 10, 2012.[1]

## II.

Earnshaw argues that the Chancery judge improperly quashed and vacated the Law Division's writ and levy. In a rider to the August 29, 2012 order denying reconsideration, the judge gave two reasons why the levy was improper. First, the judge ruled that the rents collected by the SFA were in custodia legis. Second, the judge ruled that it was improper for Earnshaw to levy upon the 60% of the rents due to Rio.

We address each rationale in turn, hewing to our standard of review. We recognize that the Chancery Division has discretion in appointing a receiver or special fiscal agent. See Ravin, Sarasohn, Cook, Baumgarten, Fisch & Rosen, P.C. v.

_____

[1] It is unclear whether the orders were properly certified under R. 4:42-2. Given the full briefing of the issues and the passage of time, we grant leave to appeal those orders nunc pro tunc under Rule 2:5-6 to avoid any uncertainty. See Taylor by Wurgaft v. Gen. Elec. Co., 208 N.J. Super. 207, 211 (App. Div.), certif. denied, 104 N.J. 379 (1986).

Lowenstein Sandler, P.C., 365 N.J. Super. 241, 249 (App. Div. 2003); see also Roach v. Margulies, 42 N.J. Super. 243, 246 (App. Div. 1956). However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm., 140 N.J. 366, 378 (1995). Because this appeal poses issues of law, we review the matter de novo. See, e.g., Cameron v. Ewing, 424 N.J. Super. 396, 401 (App. Div. 2012).[2]

### III.

As the judge noted, "'[i]t is a general rule that money or other property in the hands of an officer of a court is regarded as being in custodia legis, and in consequence ordinarily cannot be reached by execution in the absence of legislative authority.'" Naglieri v. Trabattoni, 20 N.J. Super. 173, 176 (App. Div. 1952) (quoting Fredd v. Darnell, 107 N.J. Eq. 249, 253 (Ch. 1930)); see Culp v. Culp, 242 N.J. Super. 567, 572 (Ch. Div. 1990). The question here is whether the rents due to Rio were in custodia legis.

---

[2] Because "'the substantive issues . . . and the basis for the motion judge's ruling on the [motion to quash] and reconsideration motion[] was the same,'" we consider the merits of Earnshaw's appeal. See Potomac Aviation, LLC v. Port Auth. of N.Y. & N.J., 413 N.J. Super. 212, 222 (App. Div. 2010) (quoting Fusco v. Bd. of Educ. of Newark, 349 N.J. Super. 455, 461 (App. Div.), certif. denied, 174 N.J. 544 (2002)).

"Property is considered to be in custodia legis when it is 'in the custody of the law.'" Wilzig v. Sisselman, 209 N.J. Super. 25, 31 (App. Div.), certif. denied, 104 N.J. 417 (1986).

> Thus, under our law, when a complaint is filed for the dissolution of an entity and a receiver is appointed thereunder, "such receiver becomes vested with title to the property . . . from the date of the filing of the bill." The property of the entity is thereafter in custodia legis and the receiver's possession is considered to be that of the appointing court. Implicit in any order establishing a custodia legis status, through the appointment of a receiver, is the fact that the property becomes inalienable without the knowledge and consent of the court.
>
> [Ibid. (citations omitted).]

"Accordingly, the mere appointment of a receiver operates to place property in custodia legis and automatically prohibits its sale in the absence of approval of the court." Id. at 32. Indeed, "[t]he word 'receiver' normally connotes a person or entity who takes title to property in custodia legis." In re Farnkopf, 363 N.J. Super. 382, 394 n.9 (App. Div. 2003); see Wilzig, supra, 209 N.J. Super. at 32 (noting that "case law links the custodial status of the property with the function of the receiver").[3]

---

[3] There are several types of receivers. For example, a statutory receiver serves to "liquidate the corporation"; a custodial receiver serves "to maintain the status quo for a definite

(continued)

"'It is well recognized that a court of equity has inherent power in a proper case to appoint a receiver for a corporation on the ground of gross or fraudulent mismanagement by corporate officers or gross abuse of trust or general dereliction of duty.'" Ravin, supra, 365 N.J. Super. at 249 (quoting Roach, supra, 42 N.J. Super. at 245). However, the appointment of a receiver is "'an extraordinary remedy,'" ibid., and can have the effect of "injuring the business in its relations with the public and its" customers, Roach, supra, 42 N.J. Super. at 246.

Accordingly, the Chancery Division may not appoint a receiver without meeting certain procedural requirements. For example, "an order appointing a statutory receiver for a corporation shall give the stockholders and creditors leave . . . to show cause why the receiver shall not be continued." R. 4:53-1. The receiver must file an inventory and periodic accounts, which must be audited and approved by the court. R. 4:53-7. A court may appoint a receiver "only for the short period of time required to protect assets pending a final

_____

(continued)
period of time, usually only during the pendency of the litigation"; and a rent receiver serves "to protect the mortgagee's interests by imposing a court-supervised, disinterested person to collect the rents and pay expenses pending the ultimate disposition of the mortgaged premises." Kaufman v. 53 Duncan Investors, L.P., 368 N.J. Super. 501, 506 (App. Div. 2004).

resolution of litigation or a dissolution of the business enterprise." Kassover v. Kassover, 312 N.J. Super. 96, 100 (App. Div. 1998).

It is undisputed that the Chancery Division here did not appoint a receiver, but instead took the less "drastic action" and "less onerous expedient" of appointing a special fiscal agent. See Roach, supra, 42 N.J. Super. at 245. "[T]he appointment of a 'special fiscal agent' to oversee the disbursements of a solvent corporation [is] a 'pendente lite device . . . contrived to avoid more stringent measures'" such as appointment of a receiver. Kassover, supra, 312 N.J. Super. at 100 (quoting Roach, supra, 42 N.J. Super. at 246). Here, as in Roach, "in an effort to refrain from hindering the corporate business operations and at the same time to afford some protection to plaintiff, the fiscal agent with circumscribed powers was appointed." See Roach, supra, 42 N.J. Super. at 246.

The January 9, 2012 order transferred from the Mavroudis Defendants to the SFA "managerial authority over the business operations and financial affairs" of the Property, "including (but not limited to) collection of rent, additional rent or other revenues, payment of bills or other expenditures within the ordinary course of business," hiring of employees, entering into contracts, buying supplies, and making transactions. The

order stated that the SFA would report to the court only "from time to time, as he shall deem fit." No time limit was placed on the SFA's appointment.

The order did not purport to place property _in custodia legis_. _Cf._ _Hyman v. Muller_, 1 _N.J._ 124, 127 (1948) (noting that the order appointing a receiver provided the assets he received were thereafter to "'be considered as _in custodia legis_'"). Nor did the order require the inventory and periodic accounts needed for the court to monitor property in the court's custody. The order did not require the court's approval for the sale of property. Nor did it include the other procedural protections attending a receivership, such as notice to creditors with an opportunity to object. Thus, there is nothing in the order endowing the SFA with the powers of a receiver, including a receiver's quintessential protection of property _in custodia legis_.

In the rider to the August 29, 2012 order, the judge stated that because the judge appointed the SFA, the SFA acts as a judicial officer and therefore holds the property _in custodia legis_. The judge explained that "[e]quitable remedies are distinguished for their flexibility, their unlimited variety, [and] their adaptability to circumstances." _Roach_, _supra_, 42 _N.J. Super._ at 246 (citation and quotation marks omitted).

However, the equitable remedy chosen by the judge — the appointment of a special fiscal agent — is differentiated from a receiver who holds the property in custodia legis precisely because an SFA has "circumscribed powers," provides only "some protection," and is a less "drastic action" than appointing a receiver. See id. at 245-46. Notably, neither the parties nor we have found any authority stating that a special fiscal agent holds property in custodia legis. Thus, we find the rents due to Rio were not held in custodia legis.

In any event, "'the test of immunity of property in custodia legis may in general be said to be whether substantial confusion or embarrassment to the initial jurisdiction would result from the enforcement of process against the property by another tribunal.'" Naglieri, supra, 20 N.J. Super. at 176 (quoting Fredd, supra, 107 N.J. Eq. at 253); accord Culp, supra, 242 N.J. Super. at 572-73. Here, the judge stated that the SFA was appointed because there were allegations that the Mavroudis Defendants were misappropriating funds. As in Roach, a SFA was appointed to ensure some protection to the parties from further misappropriation. Allowing the collection of debt through execution of judgment does not thwart the goal of preventing managerial misappropriation.

A-2013-12T1

The judge also stated that "allowing Earnshaw the opportunity to be prioritized as a creditor of Rio via the levy" would "deprive the SFA of utilizing his Court-appointed power to decide the order that the creditors should be paid in," and would "deprive this Court of jurisdiction over the corporation and lead to the Court's substantial embarrassment."

However, nothing in the judge's January 9, 2012 order gives the SFA the power to decide that creditors shall be paid contrary to the priorities established by law. The order simply gives the SFA the authority for "payment of bills and other expenditures within the ordinary course of business." We see nothing indicating that paying Earnshaw's invoices, or obeying a court-ordered writ of execution, falls outside the SFA's authority or the ordinary course of business. Payment of those bills has not been shown to deprive the court of jurisdiction or cause substantial embarrassment. Thus, even if the rents were in custodia legis, they could still be levied upon by Earnshaw.

IV.

The judge's rider to the August 29, 2012 order also stated that the writ and levy were quashed because Earnshaw improperly sought to levy upon the 60% of the rents due to Rio. This was not a proper basis to quash or vacate the writ of lien, even assuming that the SFA could bring such a challenge to the levy

11

before the Chancery judge, rather than the Law Division which issued the writ of execution.

The judge believed that Rio would not have possession of the rents until after the SFA made the Property profitable, at which point Rio would receive surplus funds that Earnshaw could levy upon. Indeed, in a rider to the June 28, 2012 order quashing the writ and levy, the judge instructed the SFA not to distribute any funds to Rio, and to file a report with the court detailing whether he had any "surplus funds." However, neither the judge nor the SFA anticipated there would ever be surplus funds.

In any event, when the writ was executed, nothing in the judge's January 9, 2012 order prohibited the SFA from distributing any funds to Rio. The order transferred from the Mavroudis Defendants to the SFA the managerial authority to collect rents and pay bills, but it did not bar the SFA from paying to Rio or NJRC any monies due them as the owners of the Property.

Moreover, the debts represented by the rental payments were the property of Rio and NJRC, with 60% belonging to Rio and 40% to NJRC. We note "the oft-stated general rule that a test of liability to garnishment or execution 'is whether it is the subject of assignment.'" Cameron, supra, 424 N.J. Super. at 406

(citation omitted). Here, the right to receive rents was capable of assignment by Rio, and thus was open to execution. See Gonzalez v. Wilshire Credit Corp., 207 N.J. 557, 565 n.2 (2011) (noting that "'[t]he interest of a tenant in common may, absent some contractual undertaking, be transferred without the consent of the [other co-tenant].'" (citation omitted)); see also Bauer v. Migliaccio, 235 N.J. Super. 127, 138 (Ch. Div. 1989).

The judge presumed that Earnshaw's writ of execution could reach only "surplus funds," that is, the amount of the rents remaining after payment of other creditors. However, "[a] judgment creditor is entitled to obtain execution against a debtor's 'debts' as well as earned income, trust fund income, and profits." Cameron, supra, 424 N.J. Super. at 403 (quoting N.J.S.A. 2A:17-50). The rents here are debts owed to Rio and NJRC. "After a levy upon a debt due or accruing to the judgment debtor from a third person, . . . the court may . . . direct the debt, to an amount not exceeding the sum sufficient to satisfy the execution, to be paid to the officer holding the execution[.]" N.J.S.A. 2A:17-63.

The judge stated that Rio "does not have the necessary possession of the funds in the form of the rents to allow levy," because "[t]here is great uncertainty that Rio will ever receive

rental income from the property since a foreclosure action against the property has been initiated." Although the bank holding the mortgage on the Property had commenced foreclosure proceedings, foreclosure had not yet occurred when Earnshaw obtained the writ and levy. Moreover, the bank had deferred enforcement of an assignment of rents provision of the mortgage, and had made no application for a rent receiver. Therefore, the rents were still Rio's property at the time Earnshaw's writ was executed.

The judge cited Cameron for the proposition that "'[a] debt which is uncertain and contingent, in the sense that it may never become payable, is not subject to levy and sale.'" Cameron, supra, 424 N.J. Super. at 406 (quoting Cohen v. Cohen, 126 N.J.L. 605, 610 (Sup. Ct. 1941)). "However, debts may be subject to execution 'if liquidated and certain in their existence[.]'" Ibid. (citation omitted). Here, like the reverse mortgage payments in Cameron, the tenants' "payment obligation is certain and currently payable." Ibid.; cf. Cohen, supra, 126 N.J.L. at 610 (holding a widow's right to collect a death benefit under her husband's life insurance policy if she were alive on a date in the future was too uncertain to be subject to levy).

Our ruling is "consistent with the general policy favoring enforcement of judgments."  See Cameron, supra, 424 N.J. Super. at 406.  "'It is the general policy of the law to lend the creditor all reasonable assistance for the enforcement of his claim, especially against a debtor who, though possessed of the means to pay, seeks to evade his obligation.'"  Ibid. (citation omitted).  Here, Earnshaw had obtained a judgment from the Law Division.  He had a right to enforcement of his claim against Rio's rental income, despite the SFA's preference to pay other creditors who had not yet attained the priority of a judgment. See R. 1:13-8.

Accordingly, we reverse and remand with instructions to release the escrowed funds to satisfy Earnshaw's judgment in accordance with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION