**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1802-18T1

PIO a/k/a PETER TARQUINIO,

     Plaintiff-Respondent,

v.

CLAUDIO TARQUINIO, TAMMY
TARQUINIO, EVEX, INC., EVEX
ANALYTICAL INSTRUMENTS,
INC., 2486 ROUTE 206, LLC,
CTTK, LLC, and EVEXGLOBAL,
LLC,

     Defendants.

_____

Argued October 10, 2019 – Decided January 22, 2020

Before Judges Koblitz, Whipple and Gooden Brown.

On appeal from the Superior Court of New Jersey, Chancery Division, Somerset County, Docket No. C-012069-11.

Douglas J. McGill argued the cause for appellants Drinker Biddle & Reath LLP, Walter J. Fleischer, Jr., and Paul G. Nittoly (Webber McGill LLC, attorneys; Douglas J. McGill, of counsel and on the briefs).

Douglas A. Stevinson argued the cause for respondent (Windels Marx Lane & Mittendorf, LLP, attorneys; Douglas A. Stevinson, of counsel and on the brief).

PER CURIAM

This appeal stems from a priority dispute between judgment creditors, Drinker Biddle & Reath LLP, Walter J. Fleischer, Jr., and Paul G. Nittoly (collectively, the DBR creditors) on one side, and Pio a/k/a Peter Tarquinio (Peter)[1] on the other side. The DBR creditors and Peter each obtained judgment liens in separate lawsuits against Claudio and Tammy Tarquinio, a married couple. Peter's judgments were obtained in the underlying lawsuit. The funds at the heart of the appeal are sale proceeds from real property owned jointly by Claudio and Tammy. Claudio filed for bankruptcy and although Tammy was not a party to the bankruptcy proceeding, the bankruptcy court permitted Claudio's Bankruptcy Trustee to sell Tammy's interest in the property under applicable bankruptcy law. Pursuant to the bankruptcy court's order, following the closing, Tammy's share of the sale proceeds was held in escrow by a title insurance company pending resolution of the priority dispute by a court or the parties.

---

[1] We refer to the Tarquinios by their first names to avoid any confusion caused by their common surname and intend no disrespect by this informality.

Although Peter's judgments were obtained after the DBR creditors', Peter levied on Tammy's share and filed a turnover motion for the funds before the DBR creditors. Over the objection of the DBR creditors, the trial court granted Peter's motion and denied the DBR creditors' cross-motion for a turnover order. The DBR creditors now appeal, raising the following points for our consideration:

> I.     [PETER]'S PURPORTED LEVY ON THE PROCEEDS WAS LEGALLY DEFECTIVE BECAUSE THE PROCEEDS IN THE HANDS OF THE TITLE COMPANY WERE <u>IN CUSTODIA LEGIS</u>.
>
>> A.     THE TITLE COMPANY WAS THE TRUSTEE'S AGENT, AND THEREFORE HELD THE PROCEEDS AS AN OFFICER OF THE BANKRUPTCY COURT.
>>
>> B.     NEW JERSEY LAW PROHIBITS A CREDITOR WITH A LIEN AGAINST REAL PROPERTY FROM LEVYING ON THE PROCEEDS OF SUCH PROPERTY AFTER THE PROPERTY AND/OR THE PROCEEDS ARE IN THE POSSESSION OF A COURT OFFICER.
>
> II.     THE COURT BELOW ERRED IN CONCLUDING THAT A LACK OF CONFUSION OR EMBARRASSMENT VIS-À-VIS IT AND THE BANKRUPTCY COURT SUPPORTED A FINDING THAT THE PROCEEDS WERE <u>IN CUSTODIA</u>

3

LEGIS, OR THAT THE PROCEEDS WERE NOT OTHERWISE IMMUNE FROM LEVY.

III. THE PROCEEDS RETAINED THE CHARACTER OF REALTY FOR DISTRIBUTION PURPOSES, AND [PETER]'S PURPORTED LEVY WAS NOTHING MORE THAN AN INEFFECTUAL EFFORT TO PERFECT HIS PRE-EXISTING LIEN AGAINST THE PROPERTY RATHER THAN AN EFFORT TO ESTABLISH A NEW LIEN THAT COULD BE PERFECTED BY POSSESSION.

IV. ASSUMING, [ARGUENDO], THAT [PETER]'S PURPORTED LEVY COULD HAVE HAD LEGAL EFFECT, THE LEVY DID NOT ATTACH TO THE PROCEEDS BECAUSE TAMMY HAD NO INTEREST IN THE PROCEEDS.

We reject these arguments and affirm.

I.

The following facts and procedural history are largely undisputed. In the underlying lawsuit, on October 14, 2016, Peter obtained an amended judgment[2] for compensatory and punitive damages against his brother, Claudio, and sister-in-law, Tammy,[3] totaling $3,205,259,[4] which judgment was docketed on

---

[2] The judgment was amended from an earlier judgment entered on September 27, 2016, which mistakenly omitted one of the parties.

[3] The judgment was also entered against EvexGlobal, LLC, and CTTK, LLC, jointly and severally.

[4] We round all monetary amounts to the nearest dollar.

4

November 21, 2016. The lawsuit stemmed from Claudio's and Tammy's fraudulent misconduct in the operation of several businesses the three owned and operated together. Subsequently, on December 5, 2016, and March 10, 2017, separate judgments were entered in favor of Peter against Tammy and Claudio, respectively, in the amount of $356,063 each, for counsel fees incurred by Peter in the underlying lawsuit. We affirmed the judgments in an unpublished decision issued on September 19, 2018. Tarquinio v. Tarquinio, Nos. A-1116-16 and A-3902-16 (App. Div. Sep. 19, 2018).

Previously, on April 1, 2016, the DBR creditors had obtained a judgment against Claudio and Tammy in the amount of $172,748 in an unrelated lawsuit. The judgment was docketed on April 14, 2016 and remained unsatisfied. After Peter's October 14, 2016 judgment was entered and Peter's counsel fee application was pending, Claudio filed a petition for bankruptcy protection on October 26, 2016, with the United States Bankruptcy Court.[5] In his bankruptcy filing, among his assets, Claudio listed real property located in Princeton (the Princeton property), owned by Claudio and Tammy as tenants by the entirety. Although Tammy did not file for bankruptcy protection, on November 20, 2017,

---

[5] Claudio initially filed under Chapter 11 of the United States Bankruptcy Code, but his case was subsequently converted to a liquidation proceeding under Chapter 7 pursuant to 11 U.S.C. §1112(b).

A-1802-18T1

the bankruptcy court granted partial summary judgment to Claudio's Bankruptcy Trustee, permitting the Trustee to partition and sell both Claudio and Tammy's interest in the Princeton property pursuant to 11 U.S.C. § 363(h).

After the Trustee executed a contract for the sale of the Princeton property, on July 13, 2018, the bankruptcy court entered an amended order (the bankruptcy order) with input from the parties in interest, including Peter and the DBR creditors, directing that Claudio's one-half of the net sale proceeds be turned over to the bankruptcy estate, while Tammy's one-half interest would be held in escrow by a title insurance company for distribution upon resolution of the priority dispute between the DBR creditors' and Peter's judgment liens. Specifically, in pertinent part, the bankruptcy court

> ORDERED that payment to clear any judgment liens against the Princeton [p]roperty, including judgment liens rooted in judgments respectively held by the DBR [creditors] and Peter . . . jointly and severally against [Claudio] and Tammy . . . , shall be paid exclusively from Tammy['s] . . . interest in the net proceeds of sale of the Princeton [p]roperty . . . and no amount shall be paid on account of said judgment liens from the estate's interest in the proceeds of sale of the Princeton [p]roperty until the liquidation of [Claudio's] estate in the normal course or as otherwise directed in a further order of the [c]ourt; and it is further

> ORDERED that in connection with the relief set forth in the preceding paragraph, the title insurance company (the [t]itle [c]ompany[]) handling the closing

of sale of the Princeton [p]roperty shall hold in escrow any and all proceeds attributable to Tammy['s] . . . interest in the Princeton [p]roperty (the [e]scrow [p]roceeds[]) until such time [that] either an agreement is reached between the DBR [creditors] and Peter . . . , or this [c]ourt or any other court of competent jurisdiction has made a determination with respect to the priority between the judgment liens of the DBR [creditors] and Peter . . . , at which time the [t]itle [c]ompany shall distribute the [e]scrow [p]roceeds to the DBR [creditors] and Peter . . . in accordance with the agreed upon or determined priority of their respective judgment liens, and no amount shall be distributed or released by the [t]itle [c]ompany to Tammy . . . until and unless the judgment liens have been satisfied; and it is further

ORDERED that the [t]itle [c]ompany shall not release any of the [e]scrow·[p]roceeds to any third parties unless directed by an order of this [c]ourt or any other court of competent jurisdiction, except as provided herein[.]

On September 6, 2018, Claudio's Bankruptcy Trustee consummated the sale of the Princeton property. The net sale proceeds attributable to Tammy's one-half interest totaled $263,951, and, pursuant to the bankruptcy order, was held in escrow by Greater New Jersey Title Agency, the title company selected by the buyer for the closing. Upon obtaining the name of the title company, in a September 26, 2018 letter, Peter requested the Middlesex County Sheriff to reserve a levy upon Tammy's share of the funds held by Greater New Jersey Title Agency. Accompanying the letter, Peter provided the writ of execution

7

previously issued by the trial court on March 28, 2017, ordering the Sheriff to take possession of all property owned by Tammy in order to satisfy his duly docketed judgment. On October 11, 2018, the Sherriff effectuated the levy on Greater New Jersey Title Agency and notified all interested parties accordingly.

On October 19, 2018, Peter filed a motion for turnover of the levied funds to partially satisfy his judgments. In support, Peter asserted his judgment liens should be given first priority over other non-levying judgment creditors because he was the first to serve the title company with a writ of execution and request that the Sheriff levy upon Tammy's share of the Princeton property's sale proceeds. On November 1, 2018, the DBR creditors opposed Peter's motion and cross-moved for a turnover order. In support, the DBR creditors asserted the sale proceeds should be turned over to them because their judgment was docketed prior to Peter's. Additionally, the DBR creditors claimed that the sale proceeds were in custodia legis because the title company was acting as an agent of Claudio's Bankruptcy Trustee. As such, the DBR creditors asserted the proceeds "remain[ed] subject to the [b]ankruptcy [c]ourt's jurisdiction[,]" thereby invalidating Peter's levy. Even if the sale proceeds were not in custodia legis, the DBR creditors maintained Peter failed to "establish[] that he made any effort to locate and levy upon any of Tammy's personal property before levying

on the [sale] proceeds, which [were] deemed to be real property for the purposes of distribution."

Peter countered that he took considerable steps to locate Tammy's assets. In support, Peter submitted Tammy's deposition testimony in which she testified that she had no personal assets that Peter could attach to satisfy the judgment. Further, Peter asserted he was "not seeking to enforce his lien against real property," and thus, was "not required to exhaust Tammy's personal property before levying upon the sale[] proceeds." Additionally, Peter asserted the funds were not in custodia legis because the sale proceeds were never paid into court or held by a court officer but were instead held in escrow by a title company. In a supporting certification, Claudio's Bankruptcy Trustee averred that "neither [he] nor [Claudio's] bankruptcy estate [had] an interest in Tammy['s] . . . interest in the proceeds of sale of the [Princeton] [p]roperty."

Following oral argument, on November 29, 2018, Judge Margaret Goodzeit granted Peter's motion and denied the DBR creditors' cross-motion. In a written statement of reasons accompanying the orders, the judge noted that "[b]y operation of law, the docketing of [the] DBR[] [creditors'] judgment and Peter's judgment constituted liens in favor of [the] DBR [creditors] and Peter,

respectively, on all real property within the State . . . owned by any of the judgment debtors."  The judge explained that:

> R[ule] 4:59-1 provides that the process to enforce a judgment shall be by writ of execution unless the court otherwise orders.  Under New Jersey law, the prerequisite to entry of a turnover order is the issuance of a writ of execution for the purpose of a levy.  N.J.S.A. 2A:18-27.  The turnover order is a mechanism that directs a garnishee holding the debtor's funds to pay those funds over to creditors rather than to the debtor.  See N.J.S.A. 2A:17-63. . . .
>
> Priority among creditors is determined by order of levy of execution or the date of entry of judgment if no execution was issued.  See Burg v. Edmondson, 111 N.J. Super. 82, 85 (Ch. Div. 1970).  Further, "a junior creditor who first levies upon the property of the debtor is accorded priority over a senior creditor who has not levied."  Swift & Co. v. First Nat. Bank of Hightstown, 114 N.J. Eq. 417 (Ch. 1933); Vineland Savings & Loan Assn. v. Felmey, 12 N.J. Super. 384 (Ch. Div. 1950).

The judge acknowledged that the facts in the case were "not in dispute[,]" and posited that "[t]he issue before the [c]ourt [was] the order of priority of the [two] judgment creditors, DBR and Peter."  The judge concluded that Peter had priority over the DBR creditors because although Peter's judgment was entered after the DBR creditors', "[Peter] was first in time to levy upon the proceeds[.]"  In rejecting the DBR creditors' contention that the proceeds were in custodia legis and therefore immune from Peter's levy, the judge explained that property

in custodia legis was immune from levy to avoid interference, confusion or embarrassment occasioned by one tribunal enforcing process against property under the jurisdiction of another tribunal. However, here, "the language of the [Bankruptcy] [o]rder does not indicate that the proceeds are held in custodia legis, despite the existence of several published cases upon which the [o]rder could have been modeled" in order to dictate a contrary interpretation.

Further,

> the plain language of the Bankruptcy . . . [o]rder indicates that it made no determination as to the order of priorities between [the] DBR [creditors] and Peter. Instead, the [Bankruptcy] [o]rder states, with specific reference to [the] DBR [creditors] and Peter . . . , that a[n] unnamed title company would hold the proceeds in escrow until "either an agreement is reached between the DBR [creditors] and Peter . . . , or [the bankruptcy] [c]ourt or any other court of competent jurisdiction has made a determination with respect to the priority between the judgment liens of the DBR [creditors] and Peter . . . ."
>
> Given that the Bankruptcy . . . [o]rder specifically contemplated that another court may make a determination as to priority and that the bankruptcy trustee has expressly disclaimed any interest in Tammy's one-half of the proceeds, it is clear that Peter's levy does not interfere with "orderly administration by the primary tribunal." [Fredd v. Darnell, 107 N.J. Eq. 249, 253 (Ch. 1930)].

Additionally, the judge dismissed the DBR creditors' assertion that the funds were <u>in custodia legis</u> because, as an agent of Claudio's bankruptcy trustee, the title company was "an officer of the [c]ourt." Instead, relying on the bankruptcy order and the applicable HUD-1 statement, the judge determined "the role of the title company" was that of a "settlement agent" acting "in the normal course of selling . . . property." According to the judge, "[m]erely directing the settlement agent to hold the funds pending further determination does not make it an officer of the court."

The judge also described the DBR creditors' argument that the sale proceeds retained "the legal character of real property, as opposed to personal property," as "legal fiction." However,

> even if, [arguendo], Tammy's share of the proceeds is to be considered as real property, the argument only succeeds if [Peter] did not make a good faith effort to determine if Tammy had personal property prior to levying upon the proceeds. In the case at bar, Tammy appeared for a deposition and testified that she had no assets capable of being levied. . . . [T]he [c]ourt finds that Peter has made a good faith effort to locate Tammy's personal property.

## II.

On appeal, the DBR creditors renew the arguments rejected by the judge, primarily arguing that Tammy's one-half share of the Princeton property's sale

proceeds was held by the title company in custodia legis and was therefore "immune from [Peter]'s levy." While we recognize that "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference[,]" Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995), and are instead reviewed de novo, we affirm substantially for the reasons articulated by Judge Goodzeit in her sage statement of reasons. We add the following comments.

"Property is considered to be in custodia legis when it is 'in the custody of the law.'" N.J. Realty Concepts, LLC v. Mavroudis, 435 N.J. Super. 118, 124 (App. Div. 2014) (quoting Wilzig v. Sisselman, 209 N.J. Super. 25, 31 (App. Div. 1986)). In New Jersey, "[i]t is a general rule that money or other property in the hands of an officer of a court is regarded as being in custodia legis, and in consequence ordinarily cannot be reached by execution in the absence of legislative authority." Id. at 123-24 (alteration in original) (quoting Naglieri v. Trabattoni, 20 N.J. Super. 173, 176 (App. Div. 1952)). "[T]he test of immunity of property in custodia legis may in general be said to be whether substantial confusion or embarrassment to the initial jurisdiction would result from the enforcement of process against the property by another tribunal." Id. at 127 (quoting Naglieri, 20 N.J. Super. at 176). "The rationale of the rule is 'based

13

upon a necessity, incident to orderly judicial procedure, for any court which has acquired primary jurisdiction over property to continue the exercise of that jurisdiction free from embarrassment or conflicts with other courts arising from other claims against the same property.'" Culp v. Culp, 242 N.J. Super. 567, 572 (Ch. Div. 1990) (quoting Fredd, 107 N.J. Eq. at 253).

Here, Claudio's Bankruptcy Trustee was appointed as an officer of the bankruptcy court and thereby served as an agent of Claudio's estate and creditors. See Kernan v. One Wash. Park Urban Renewal Assocs., 154 N.J. 437, 452-53 (1998) ("Numerous cases have recognized that a trustee is the agent for the bankruptcy court and for creditors."). However, the record does not support the DBR creditors' contention that the title company served as the agent of Claudio's bankruptcy trustee. As Judge Goodzeit recognized, the bankruptcy order contains no provision mandating, or even suggesting, that the funds were to be held in custodia legis. Moreover, the bankruptcy order does not provide for, nor does the record reflect, any sort of accounting procedure that would be required of a court officer holding funds in custodia legis. See Mavroudis, 435 N.J. Super. at 126 (holding "that a special fiscal agent [did not] hold[] property in custodia legis" because the order appointing the agent "did not purport to

place property <u>in custodia legis</u>[,]. . . [n]or did the order require the . . . periodic accounts needed for the court to monitor property in the court's custody.").

Further, Claudio's Bankruptcy Trustee expressly disclaimed that Claudio's estate had any interest in the funds held by the title company. Additionally, the record does not reveal any sort of control or connection by and between Claudio's Bankruptcy Trustee and the title company, which was selected and paid by the Princeton property's buyer. Such control is a prerequisite to establishing an agency relationship. <u>See</u> <u>Kernan</u>, 154 N.J. at 453 ("It is well-established that '[a]n agency relationship is created when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent.'" (alteration in original) (quoting <u>Sears Mortg. Corp. v. Rose</u>, 134 N.J. 326, 337 (1993))). Therefore, we agree with Judge Goodzeit that the title company was not the agent of Claudio's Bankruptcy Trustee, and, as such, was not an officer of the bankruptcy court. Accordingly, Tammy's share was not held <u>in custodia legis</u> by the title company.

Relying primarily on Chancery Division cases, the DBR creditors alternatively contend that once the bankruptcy court assumed subject matter jurisdiction over Tammy's interest in the Princeton property in order to sell it as part of Claudio's liquidation proceedings, "the relative priorities of existing

judgment lienholders with respect to the [Princeton] [p]roperty and its proceeds became fixed." We agree that the Princeton property was initially subject to the bankruptcy court's jurisdiction as a result of Claudio listing it among his assets. However, once Tammy's share was partitioned pursuant to applicable law, and both Claudio's and Tammy's one-half interests were sold, Tammy's share ceased to be under the jurisdiction of the bankruptcy court.

Equally unavailing is the DBR creditors' contention that the sale proceeds retained the legal character of real property subject to their first-priority lien. Indeed, once the Princeton property was sold pursuant to the bankruptcy order, the DBR creditors' lien "with respect to the sold property" was "completely extinguished" under long-established New Jersey law. New Brunswick Sav. Bank v. Markouski, 123 N.J. 402, 413 (1991). At that juncture, "[i]rrespective of when a judgment creditor obtains or dockets a judgment, the creditor who levies first has priority over all nonlevying judgment creditors[,]" and "even a junior levying creditor" has "priority over all senior nonlevying judgment creditors in the distribution of the proceeds . . . ." Ibid. (citing N.J.S.A. 2A:17-39). See also N.J.S.A. 2A:17-15.

Here, by levying upon the sale proceeds before the DBR creditors, Peter gained first priority over the earlier DBR creditors' judgment. Moreover,

16

contrary to the DBR creditors' assertion, Tammy maintained an undeniable interest in the funds as evidenced by the bankruptcy order's provision that "no amount shall be distributed or released by the [t]itle [c]ompany to Tammy . . . until and unless the judgment liens have been satisfied[.]" <u>See</u> <u>Terry v. Owatonna Canning Co.</u>, 119 N.J.L. 455, 457 (1938) (explaining that a "levy under a writ of attachment . . . 'operates only upon such rights in the property as the debtor has at the time of the levy'") (quoting 6 C.J. 242)). To the extent we have not addressed a particular argument, it is because either our disposition makes it unnecessary or the argument was without sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

 Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION